In re Harlan B. COSNER, Bankrupt.

Louis SHERMAN, Trustee, Plaintiff,

v.

EUGENE FARMERS COOPERATIVE, Defendant.

Bankruptcy No. 78–02764.

United States Bankruptcy Court, D. Oregon.

March 20, 1980.

Charles O. Porter, Eugene, Or., for plaintiff.

Lee A. Omlid, Eugene, Or., for defendant.

## OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

C. E. LUCKEY, Bankruptcy Judge.

Plaintiff trustee seeks judgment against the defendant, a cooperative of which the bankrupt was a member for the amount set aside as capital reserve from patronage dividends based upon the bankrupt member's purchases from the defendant cooperative.

The defendant cooperative is organized under the laws of the State of Oregon, and the bankrupt as a member purchased shares and signed an agreement to abide by the by-laws of the cooperative.

The by-laws authorized the cooperative's directors to [Article VIII, section 3] establish "net margins" (excess of receipts from member patronage business over costs and expenses) and from them to allocate annually to members in proportion to their patronage distributions to be reported by the member as taxable income, with the remainder of the net margins not so allocated and distributed in accordance with the determination of the board of directors, to be allocated to the "Capital Reserve", thereby providing retained capital for the cooperative, but reflecting the ownership interest

of the member-patron, to be paid at such future time as the directors determined. The testimony in the trial indicated currently such "equity credits" are being redeemed on a revolving nine year basis.

The defendant contends by its by-laws a security interest is created in the capital reserve accounts, and that because of obligations due from the bankrupt the funds are not assets of the bankrupt and thus not of the plaintiff trustee, and further, that the capital reserve accounts are illusory dependent upon future business experience regarding profit margins or lack thereof, and if any amounts exist in a member's account distribution is delayed and not payable until a dividend be declared, and further that a right of offset should exist against the account in favor of the defendant.

Testimony of the bankrupt and of the manager of the defendant was offered, but did little to clarify the issues before the Court. The bankrupt contended that he did not read the by-laws relied upon by the defendant to create a security interest.

The manager of the cooperative had no exhibits other than by-laws amended after the bankrupt joined the cooperative, and while emphasizing the requirement of delay in payment under the revolving scheme upon declaration by the directors of dividends, testified that the allocations were vested, current obligations absolutely due and owing, but subject only to delayed payment. He also testified that the asserted security interest in the capital reserves was not recorded and it was not the policy of the cooperative to record any financing statement relating to them.

█ Resolution of the issues herein involves consideration of the perplexing body of law that has developed concerning cooperatives, a type of business structure that causes results appropriate to the structure, *sui generis* in law and equity. The property interests of the revolving accounts have characteristics of both shares of stock in a corporation and of corporate obligations, but concerning cooperatives, as one court, *Clarke County Cooperative v. Read,* 243 Miss. 879, 139 So.2d 639, 641 (1962) stated:

"It is well settled that equity credits allocated to a patron on the books of a cooperative do not reflect an indebtedness which is presently due and payable by the cooperative to such patron. Such equity credits represent patronage dividends which the board of directors of a cooperative, acting under statutory authority so to do, has elected to allocate to its patrons, not in cash or other medium of payment which would immediately take such funds out of the working capital of the cooperative, but in such manner as to provide or retain capital for the cooperative and at the same time reflect the ownership interest of the patron in such retained capital. The interest will be paid to the patron at some unspecified later date to be determined by the board of directors of the cooperative."

See also *Howard v. Eatonton Cooperative Feed Co.,* 226 Ga. 788, 177 S.E.2d 658, 662 (1970).

The nature of the patronage dividends after allocation to capital reserve accounts appears well defined in the case of *In re F. L. F. Farmers Cooperative Association,* 170 F.Supp. 497 (D.C.N.J.1958). The court there pointed out that such certificate of interest or equity was not a credit of the association within the meaning of the bankruptcy act since patronage dividends, although declared, did not represent debts due and owing by the association, unlike corporate cash dividends declared by an ordinary corporation under the general corporation law, which, upon declaration, become debts due and owing to the shareholders thereof.

In *Evanenko v. Farmers Union Elevator,* 191 N.W.2d 258, 50 A.L.R.3d 428, (N.D. 1971), the court, in affirming a summary judgment for the cooperative in an action by a deceased patron's administratrix to recover patronage credits which had accrued for the benefit of such patron on account of business done with the cooperative, stated:

"Thus it will be noted that the patronage credits constitute an interest of the pa-

tron in the cooperative which is contingent and not immediately payable. This interest becomes vested only when the board of directors, in the exercise of its sound discretion, determines that such payments can be made in cash without causing undue financial hardship to the cooperative."

■ That the capital reserve accounts are not immediately payable does not, however, remove them from the category of property in which the trustee has an interest, under § 70a(5) of the Bankruptcy Act. As the Court pointed out in *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1965):

"The main thrust of § 70a(5) is to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition. To this end 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed."

See also *Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). It is also apparent that the interest in the capital reserve account which is under consideration here is, in the words of the *Segal* court "sufficiently rooted in the prebankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered fresh start that it should be regarded as 'property' under § 70a(5)", 382 U.S. at 380, 86 S.Ct. at 515, and consideration as such is consonant with the Congressional intent discussed above.

■ Discretionary restrictions on alienability and postponement of enjoyment do not divest the asset of its nature as property although value and marketability may be affected (See *Collier on Bankruptcy*, 14th Ed. §§ 70.15(2), 142.1–143, and *In re Wright* (2 Cir. 1907) 157 F. 544.)

"The question briefly stated is therefore whether the bankrupt's interest in the renewal premiums under the contract was property which he could by any means have transferred . . .

"Now it is of little importance whether the bankrupt and the insurance company jointly or separately, might interfere with the trustee in realizing upon those interests. If they are property which can by any means be transferred, the creditors of the bankrupt are entitled to the benefit of them, however little they may bring. Marketability and assignability are quite distinct. Upon the face of the contract it would seem that the bankrupt had an interest in his contract which should be made available for his debts. Courts should not be swift to find reasons why creditors should not receive the benefits of all a bankrupt's assets . . . ."

It is noteworthy that the Bankruptcy Reform Act of 1978, which does not apply to this case, invalidates restrictions on the transfer of property.

■ The assertion of defendant that the capital reserve account is subject to a security interest because of its bylaws which are authorized by statute appears sound, but no basis has been shown by the defendant for the Court to relieve the defendant of the requirement of the Uniform Commercial Code that to be enforceable security interests must be perfected. There was no recording, and the treatment of the funds by the defendant not as a segregated fund but merged with other funds of the cooperative for general capital requirements did not entitle the cooperative to treat the collateral as in its possession because of the provisions of ORS 79.2030. The account can be classified only as a general intangible, which are not capable of being reduced to possession to satisfy perfection under the provisions of the U.C.C. See *In Re Sanelco*, 7 U.C.C.Rep. 65, 70 (D.C.M.D.Fla.Ref.1969) (Bankruptcy No. 68–83–T). No evidence has been offered to reify the intangible into nonintangible property, and therefore while absent third party interests or bankruptcy a security interest may be said to have been available against the bankrupt, none is available against the trustee without perfection by recording.

Finally, the defendant asserts that sums in the account should be subject to offset against moneys due the cooperative from the bankrupt. Although Article IX, Section 5, in accord with the Oregon statute relating to cooperatives provides for right of setoff of indebtedness of the patron member of the cooperative against any money becoming payable to the patron with respect to allocations, there is no current fund payable upon which to base offset. The equity credits are not an indebtedness of a cooperative presently payable to members, but represent an interest which will be paid to them at some specified later date to be determined by the board of directors. Therefore, equity credits cannot be used as a setoff.

Section 68 of the Bankruptcy Act relating to setoffs requires mutual debts or mutual credits and accounts stated so that a balance may be calculated to be allowed or paid. The contingent nature of the equity credits renders inappropriate the application of the provisions of § 68 for setoff.

It is to be noted that the defendant has filed a claim in the estate for the full amount due from the bankrupt showing no right of offset in the claim against any sums due the bankrupt.

It is the opinion of this Court that the plaintiff is entitled to have vested in him, with right to sell, interest that the bankrupt held in the capital reserve accounts, but that such sale is subject to the burdens of delay of payment and restrictions on transfer applicable to them. Arbitrary and capricious refusal of the board of directors to enable transfer, despite discretionary power in the by-laws might entitle the trustee in such event to equitable relief. However, although entitled to receive the proceeds of the accounts when payable by their terms, or to liquidate his interest therein, the trustee is entitled presently to no money judgment. The cooperative has no present duty to make payment to the bankrupt nor to the trustee who has succeeded to his rights.

The Court therefore enters the following

## FINDINGS OF FACT

1. Plaintiff is the trustee of the bankruptcy estate of Harlan B. Cosner.

2. Harlan B. Cosner is a member of defendant cooperative and defendant has allocated $1,783.84 in the capital reserve account in the name of Harlan B. Cosner.

3. The capital reserve account is to be distributed only in accordance with determination of the board of directors of the defendant at a future date.

4. The capital reserve account is subject to transfer restrictions, but is property which may by some means be transferred and therefore is an asset which may be liquidated by the trustee plaintiff for the benefit of the bankrupt estate.

5. The defendant by the membership agreement and its by-laws obtained a security agreement in the capital reserve account, but did not perfect the agreement to make it effective against the trustee.

6. The capital reserve account is intangible and therefore not subject to perfection of the security by possession.

7. The capital reserve account is not a debt from the defendant to the plaintiff, but an equity credit which may not be currently offset against money due the defendant from the bankrupt, and

## CONCLUSIONS OF LAW

1. The plaintiff is entitled to judgment that he succeeds to the interest of the bankrupt in the capital reserve account.

2. The plaintiff may transfer and sell the capital reserve account subject to the restrictions that apply to it.

3. The plaintiff is not entitled to require the defendant to presently turn over to him the sum of $1,783.84.

4. That each party shall bear his or its own costs in this litigation.