In re Gerald A. SCHAUER and
Corinne A. Schauer, Debtors.

Samuel V. CALVERT, Trustee in
Bankruptcy, Plaintiff,

v.

BONGARDS CREAMERIES, a coopera-
tive association, Gerald Schauer and
Corinne Schauer, Defendants.

Bankruptcy No. 5–85–12.
Adv. No. 5–85–37.

United States Bankruptcy Court,
D. Minnesota,
Fifth Division.

June 26, 1986.

Samuel V. Calvert, pro se.

Trevor R. Walsten, Shakopee, Minn., for debtors.

Phillip W. Bohl, William J. Fisher, Minneapolis, Minn., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR JUDGMENT

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding has been submitted to the undersigned United States Bankruptcy Judge for decision upon a written Stipulation of Fact, Memoranda of Law, and oral argument made on May 22, 1986. Plaintiff Samuel V. Calvert appears *pro se.* Defendant Bongards Creameries (hereinafter "Bongards") appears by its attorneys, Phillip W. Bohl and William J. Fisher. No appearance has been made by or on behalf of Defendants Gerald and Corinne Schauer (hereinafter "Debtors"). Upon the documents and arguments submitted, and all of the other files and records herein, the Court makes the following Findings of Fact, Conclusions of Law, and Order for Judgment.

### FINDINGS OF FACT

Debtors are dairy farmers from Cass County, Minnesota, who filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code in this Court on January 14, 1985. Plaintiff is the duly appointed trustee of Debtors' Chapter 7 estate and has brought this adversary proceeding in that capacity. Bongards is a nonprofit farmers' cooperative association organized under MINN. STAT. c. 308. It markets the dairy and other agricultural products of its members and other producers and procures farm supplies and equipment for its members and other persons. Members, producers, and purchasers who deal with Bongards are termed "patrons." In accordance with its status as a nonprofit cooperative, Bongards periodically distributes the net profit

(termed "net margin," as specifically defined at Article V, Section 3 of Bongards' By-Laws) to its patrons in amounts proportionate to the value of their patronage. It must do so to preserve its tax-exempt status under the Internal Revenue Code. Historically, Bongards has made these distributions on an annual basis, generally during the month of August. At at all times relevant to Debtors' bankruptcy case, Bongards paid a portion of Debtors' annual "net margin" to them in cash and deposited the remainder in Debtors' account in a "Patrons' Revolving Fund," established under Bongards' By-Laws "for the purpose of acquiring and maintaining adequate capital to finance its business, and for the purpose of dividing the cost of financing its business among it current patrons in proportion to their respective patronage." *See* Bongards' By-Laws, Article VII, Section 1. Debtors were patrons of Bongards during the years 1978 through 1984. During the years 1978 through 1984, Bongards annually distributed a portion of Debtors' net margin (varying from 20% to 30%) and issued certificates to Debtors evidencing the deposit of the balance in their account in the Patrons' Revolving Fund. The total of the funds deposited (the face value of the Revolving Fund certificates issued) on Debtors' account during these years was $40,531.15. (For brevity, this property shall be referred to as "the revolving fund account.") Debtors did not owe any debt to Bongards on the date of their bankruptcy filing and Bongards does not allege that it has any right of offset which would reduce its obligation to Debtors.

At all relevant times, Bongards' Board of Directors has authorized the redemption of such certificates in cash on an annual basis, on a "first-issued first-redeemed" basis. Bongards' By-Laws mandate that "[t]here shall be no discrimination between contributions received in the same fiscal year," prohibiting Bongards from selectively redeeming revolving fund certificates issued in any given year; the redemption of one certificate mandates the contemporaneous redemption of all certificates issued that year. Historically, Bongards has redeemed these certificates seven years after their date of issuance.

Under Bongards' By-Laws,

No assignment or transfer of any interest in the revolving fund shall be binding on [Bongards] without the consent of the Board of Directors nor until the same shall have been entered on the books of [Bongards].

Bongards' Board has not consented to Plaintiff's or the estate's sale, assignment or transfer of the certificates or the revolving fund account. Further, as a matter of its business practice, it does not consent to *any* patron's sale, assignment, or transfer of a revolving fund certificate or of the corresponding account. This policy is not set down in writing but the parties to this adversary proceeding apparently agree that Bongards does not apply it in a discriminatory fashion. Bongards' Board alleges that it bases this policy on three considerations: first, to avoid potential liability for redemption payments made to persons who are not the true holders of the certificates; second, to avoid administrative complications in record-keeping which might arise from free assignability; and third, to avoid the jeopardy to Bongards' federal tax-exempt status which might result from allowing assignments, transfers or sales of patrons' net margins. There is no evidence before the Court that Bongards' first and third concerns, legal in nature, are based on any specific prohibition under statute or regulation, or on any construction of statutory or regulatory provisions in reported case law; rather, they seem to be borne of Bongards' Board's conservative fiscal policy. The parties do not dispute that it would be within the authority of Bongards' Board under the By-Laws to change the policy in favor of freer assignability.

## CONCLUSIONS OF LAW

Plaintiff has commenced this adversary proceeding as trustee of Debtors' Chapter 7 bankruptcy estate. Debtors have not claimed as exempt any portion of the revolving fund account. Plaintiff seeks this

Court's judgment: 1. establishing that Debtors' bankruptcy estate is the owner of the revolving fund account; 2. ordering Bongards to transfer Debtors' and the estate's record interest in the account to any persons to whom Plaintiff may sell or transfer them; and 3. ordering Bongards not to discriminate in any way against the present or future holder of the account. At oral argument, counsel for Bongards acknowledged that the account is now property of Debtors' bankruptcy estate. However, Bongards opposes the grant of the remaining relief requested by Plaintiff, arguing that its Board may not be compelled to consent to Plaintiff's transfer of the revolving fund account to a third party and that such a transfer, voluntary or involuntary, would both jeopardize Bongards' federal tax-exempt status and contravene its By-Laws, policies, procedures, and business practices.

At base, Plaintiff brings this adversary proceeding under 11 U.S.C. § 543(b)[1], as he first requests an Order of this Court requiring Bongards to turn over to him property which he alleges to be property of Debtors' bankruptcy estate. He also requests declaratory relief in the form of an Order confirming his right to transfer the estate's interest in that property, free and clear of any restrictions which may be imposed by Bongards' By-Laws and unwritten business practices.

■ The filing of Debtors' bankruptcy Petition created an estate, comprised of all the following property, wherever located and by whomever held:

(1) ... in all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a). Congress intended that the scope of property interests passing into the bankruptcy estate would be broad, and would include all kinds of property, wheth-

er tangible or intangible, as well as causes of action and all the other types of interests previously treated as property of the estate under the Bankruptcy Act of 1898. H.R. REP. No. 595, 95th Cong., 1st Sess. 367 (1977); S. REP. No. 989, 95th Cong., 2d Sess. 82 (1978) U.S.Code Cong. & Admin. News 1978, p. 5787.

Given the all encompassing reach of § 541(a)(1), this Court would have had no difficulty concluding that Debtors' revolving fund account became property of the estate upon the filing of their bankruptcy Petition, even had Bongards not finally conceded this point. Since Debtors' entitlements are now property of the estate subject to Plaintiff's administration, transfer of record ownership on Bongards' books is no more than a ministerial act which the Court will order Bongards to perform. The Court will also order Bongards to issue appropriate certificates to Plaintiff evidencing his succession to Debtors' entitlements. Thus, any further ambiguity as to the *current ownership* of these rights will be resolved.

Plaintiff apparently concedes that he cannot compel Bongards to redeem the unmatured revolving fund certificates, at least without requiring Bongards either to violate its By-Laws or to take action which probably would render it insolvent by redeeming *all* certificates issued between 1978 and 1984. Plaintiff seeks this Court's Order concluding that he has the power to freely transfer the revolving fund account to any person, whether Bongards' Board has previously authorized such transfer or not. The Court cannot enter such an Order.

■ It is by now axiomatic that the broad scope of the estate under the § 541(a)(1) definition does *not* enlarge a trustee's substantive property rights beyond those existing at the commencement

---

1. This statute provided in pertinent part as follows:

(b) A custodian shall—
(1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case ...

of the case. *In Re N.S. Garrott & Sons,* 772 F.2d 462, 465-66 (8th Cir.1985); *Calif. Board of Equalization v. MGM Liquor Warehouse,* 52 B.R. 77, 80-81 (D.Minn. 1985). The trustee and the estate succeed only to the title and rights in property which the debtor had; the mere commencement of a bankruptcy case does not vest the trustee with property rights which the debtor could not himself wield. *In Re Wright,* 39 B.R. 623, 628 (D. S.C.1983); *Ga. Pacific Corp. v. Sigma Serv. Corp.,* 22 B.R. 984, 985 (M.D. La.1982); *In Re Shepard,* 29 B.R. 928, 932 (Bankr. M.D. Fla. 1983); *In Re Klayer,* 20 B.R. 270, 272 (Bankr. W.D.Ky.1981).

The various bankruptcy reporting services are almost devoid of cases on point. The only reported decision is *In Re Cosner,* 3 B.R. 445 (Bankr.D.Ore.1980), a Bankruptcy Act case. Both Plaintiff and Bongards cite this case in support of their arguments—to opposite effect. *Cosner* also involved a turnover proceeding brought by a bankruptcy trustee against a farmers' cooperative; the only noteworthy distinction between that case and this is the respective nomenclature used to denominate the pooled profit account and the patron's interest in it. The *Cosner* Court first resolved the issue of whether the bankrupt's "equity credits" in the cooperative's "capital reserve account" were property of the estate under the Bankruptcy Act. The Court readily concluded that, even given the somewhat more restricted definition under § 70(a) of the Act, these entitlements were property of the estate.

The fact that both parties to the instant case argue *Cosner* in support of their respective positions is due to the following language:

It is the opinion of this Court that the [trustee] is entitled to have vested in him with right to sell, interest that the bankrupt held in the capital reserve accounts, but that such sale is subject to the burdens of delay of payment and restrictions on transfer applicable to them.

3 B.R. at 449. Plaintiff uses this language to support his contention that neither the

Internal Revenue Code nor applicable state law prohibit the transfer of Debtor's revolving fund entitlements to third parties. Bongards uses it to support its argument that the trustee holds no transfer rights more extensive than those which Debtors held. Plaintiff in turn notes the *Cosner* Court's hint that an "arbitrary and capricious refusal" by a Board to enable a transfer from a trustee to a third-party purchaser might merit an Order from the Bankruptcy Court requiring the cooperative to permit and record the transfer. *See* 3 B.R. at 449.

The Court concludes that *Cosner* and applicable provisions of the Code support Bongards' position, and not Plaintiff's. To be sure, 11 U.S.C. § 541(c)(1)(A) provides that:

... an interest of the debtor in property becomes property of the estate ... notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor ...

However, in enacting this provision Congress intended to eliminate the barriers to the transfer of property *to* the estate and nothing more; it did not intend to vitiate restrictions under prepetition agreements on transfer of that property out of the hands of the trustee standing as successor to the debtor. H.R. REP. No. 595, 95th Cong., 1st Sess. 369 (1977); S. REP. No. 989, 95th Cong., 2d Sess. 83 (1978); *In Re Polycorp Assoc., Inc.,* 47 B.R. 671, 672 (Bankr.N.D.Cal.1985). Thus, § 541(c)(2) does not void the restrictions on the further transferability of the revolving fund account imposed by Bongards' Board.

In accordance with the clear import of the statute, legislative history, and cases, this Court declines to adopt the rule suggested in *dicta* in *Cosner* that the Bankruptcy Court has the equitable power to compel a cooperative to approve transfer of revolving fund entitlements if the cooperative is arbitrarily and capriciously refusing to consent to the same. This Court cannot by its fiat vest Plaintiff with new or

expanded rights over the revolving fund account which did not exist prior to Debtors' invocation of its jurisdiction. However, even if it had decided otherwise, the record does not show or even suggest that Bongards' Board is acting arbitrarily and capriciously. Plaintiff has produced no evidence that Bongards is discriminating against him in his status as trustee, or is taking any action in disdain of this Court's jurisdiction or Plaintiff's status. Entirely to the contrary, Bongards is applying the same policy to Plaintiff as it is applying to all persons holding revolving fund certificates issued between 1978 and 1984. Without a showing of particularized discrimination against Plaintiff, it cannot be said that Bongards' Board is acting arbitrarily and capriciously in its refusal to consent to a transfer.

■ Plaintiff argues at length and in very involved fashion that relevant Internal Revenue Code provisions recognize the transferability of revolving fund entitlements, and that MINN.STAT. c. 308 does not prohibit such transfer. However, this argument carries no weight in view of the Court's prior conclusions. In the first place, neither of the parties has adequately briefed and argued the complex issue of whether Bongards would suffer any prejudice to its tax-exempt status by the making of such a sale or transfer, with its consent or without. In any event, the Court need not reach this "ultimate" issue. Plaintiff's position may be well-taken; Bongards may be under no risk if it consented to Plaintiff's transfer. What Plaintiff fails to recognize in this argument is that the parties—and this Court—are bound by the nature and extent of the property interests that obtained as of the date of Debtors' bankruptcy filing. Those characteristics are determined by non-bankruptcy law. *Ga. Pacific Corp. v. Sigma Serv. Corp.* at 985–86; *In Re Polycorp Assoc., Inc.*, at 673. The Internal Revenue Code and Minnesota state law may set certain minimal operating requirements for Bongards to qualify for special tax treatment; those laws may not explicitly prohibit the transfer of revolving fund entitlements; those laws may

even, by some stretched and selective reading, envision that such entitlements may be transferred without the cooperative's restriction and without jeopardy to its preferred tax status. However, even if so construed, those laws only delimit Bongards' options in its treatment of the transferability of revolving fund accounts. It was open to Bongards to take a more conservative course and to restrict transferability; it did so. Bongards' By-Laws and policies are the primary source of "non-bankruptcy law" determining the estate's rights here—not the arguably broader, but only *permissive*, state and federal statutes cited by Plaintiff. Debtors consented to the governance of this law—private in nature, but still legally enforceable to the extent it did not offend state or federal law—when they joined the cooperative. The By-Laws grant Bongards' Board the discretionary authority to consent or not consent to the transfer of revolving fund entitlements. This Court cannot override that authority in the absence of any showing that its exercise is contrary to state or federal law, or that it has been exercised against Plaintiff in a discretionary fashion. Even if the Internal Revenue Code implicitly or explicitly recognizes the transferability of revolving fund entitlements, in situations narrow or broad, the issue need not concern this Court.

■ Undaunted, Plaintiff then argues that Minnesota state law invalidates the restrictions on transferability at issue, for want of a "conspicuous notation" of the restriction on the revolving fund certificates themselves or via another writing. *See* MINN.STAT. §§ 302A.429 subd. 2 and 336.8–204. The difficulty with this argument is that it assumes that patronage dividends—and any revolving fund entitlements created in yearly allocations of patronage dividends—are equity securities. Patronage dividends are entitlements to share in the profit of a cooperative, whose use and enjoyment may be deferred until the cooperative's board determines in its discretion to distribute them. They are distinct from shares of the capital stock in

the cooperative, which are equity securities.[2] True, patronage dividends may be distributed *in the form of* capital stock or equity securities. *See* MINN.STAT. § 80A.15 subd. 2(j). However, patronage dividends are not in themselves equity securities subject to the requirements of MINN.STAT. c. 302A and Article 8 of MINN.STAT. c. 336. Bongards own By-Laws underline this distinction. *Compare* By-Laws Article IV ("Capital Stock and Certificates") with Article V, Section 1 ("Patrons and Patrons' Net Margins"). Thus, the transferability restrictions are not void for lack of conspicuous notation on the certificates, and Plaintiff may not assert the status of bonafide purchaser without notice under 11 U.S.C. § 544 to take the revolving fund account free and clear of restrictions on transferability.

Thus, Plaintiff has taken the revolving fund account subject to the restrictions on it in Debtors' hands as of their bankruptcy filing. As he cannot transfer the account to a third-party purchaser without Bongards' Board's approval, he may well have to delay full administration of Debtors' estate until Bongards' Board authorizes distribution of all of the funds in the account in due course. This may well take another six years or longer.

The Court recognizes that its holding does not further one of the goals of the Bankruptcy Code, which is to encourage the expeditious administration of estates for the benefit of claimants against them. However, to grant the relief requested would violate a more basic principle of bankruptcy law under the Code, the recognition that the invocation of bankruptcy jurisdiction does not create new substantive rights in the property of the estate. Though the Court's holding may result in more bankruptcy estates and cases remaining open for longer periods of time to fully garner in assets of the nature presented here—particularly with the recent increase in Chapter 7 filings by farmers in this District—that cannot be helped. In this instance, the goal of administrative convenience must bow to superior principles.

## ORDER FOR JUDGMENT

Based upon the foregoing Findings of Fact and Conclusions of Law, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. That the entitlement to share in Defendant Bongards Creameries' Revolving Fund evidenced by the Revolving Fund Certificates issued to Defendants Gerald A. Schauer and Corinne A. Shauer during the years 1978 through 1984 became property of Debtors' bankruptcy estate upon the filing of Debtors' bankruptcy Petition, to which Plaintiff succeeded as trustee of that estate;

2. That Defendant Bongards Creameries shall, at the earliest possible date, take all actions necessary to transfer the record ownership of the entitlement described in Term 1 from Defendants Gerald A. Schauer and Corinne A. Schauer to Plaintiff, and to issue such certificates to Plaintiff evidencing his and the estate's record ownership of those entitlements as may be appropriate under Defendant Bongards Creameries' practices;

3. That Defendant Bongards Creameries is not obligated to consent to Plaintiff's transfer to any third person of the entitlement described in Term 1, and Plaintiff does not have the right to make such a transfer without the consent of the Board of Directors of Defendant Bongards Creameries.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

**2.** For instance, stockholders "may" provide in a cooperative's bylaws that nonmember patrons may still receive patronage dividends. *See* MINN.STAT. § 308.12 subd. 1.