## In re LAMAR FARMERS EXCHANGE, Debtor.

## LAMAR FARMERS EXCHANGE, Plaintiff

v.

## MFA, INCORPORATED, et al., Defendants.

Bankruptcy No. 84–00085–SW–S–2–11.

Adv. No. 84–0412–SW–S–2–11.

United States Bankruptcy Court, W.D. Missouri, S.D.

Aug. 3, 1987.

---

Jack Hoke, Springfield, Mo., for debtor.

Wayne H. Hoecker, Kansas City, Mo., for MFA.

## MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

Debtor, Lamar Farmers Exchange, ["Lamar"] is a cooperative corporation engaged in the business of the retail marketing of agricultural products. From 1971 until January 1, 1984, Lamar was a member of MFA, Inc., pursuant to a License Agreement. MFA notified Lamar by certified mail on October 25, 1983, that it would terminate its license and service agreement on January 1, 1984, due to Lamar's failure to pay its past due accounts. Lamar filed its Chapter 11 petition on January 11, 1984.

## I. PATRONAGE EQUITY CLAIM

Defendant MFA is a non-stock membership corporation existing under that Non-

Profit Cooperative Marketing Law of Missouri (Chapt. 274 R.S.Mo.). MFA is engaged in the business of selling at wholesale and retain agricultural products. MFA's bylaws require it to allocate any savings to its members in proportion to their patronage with the association. This allocated net profit is paid part in cash and part in "patronage equity" which becomes property of the member. It is MFA's position that these patronage equities are not debts of the corporation. MFA's bylaws provide that patronage equity may be retired only at the discretion of the board of directors, and until the board declares them due, a member has no right to receive payment for them.

Plaintiff Lamar filed adversary proceeding No. 84–0412–SW–S–2–11 seeking a turnover under the provisions of 11 U.S.C. § 542(d) because MFA, Inc. has refused to set off Lamar's debt against its accumulated patronage equity. It is undisputed that at the time Lamar filed its petition in bankruptcy, it had been allocated patronage equity credit of at least $774,616.35. Lamar contends it had an additional $16,372.94 in patronage equity in MFA Oil Co. The oil company account was assigned to MFA, Inc. prior to Lamar's bankruptcy because Lamar did not have enough patronage equity in MFA Oil Co. to cover its debt there. It is undisputed that at the time of filing, Lamar's combined debt to MFA and MFA Oil was $526,695.82.

MFA admits that it has on several occasions set off the debt of other members against their patronage equities. MFA's Articles and By-Laws state that it shall have a lien on the patronage equities of a member to the extent of their debt to the corporation. MFA argues that the board of directors of the corporation have the discretion to redeem or cancel patronage credits and they may not be offset against debt until the board declares them due and payable. It also contends that the stated value of the credit is not necessarily its present value. MFA states that operating losses have substantially eroded the actual value of its stated equity. Defendant's Response Brief at 2. Defendant adds that to pay Lamar the stated value of its equity

interest in order to discharge its debt to the corporation would discriminate against the other equity holders whose interests have also been adversely affected by operating losses. *Id.* at 2–3.

The parties both seek support for their positions in *In re Cosner,* 3 B.R. 445 (Bankr.D.Ore.1980); *In re Shiflett,* 40 B.R. 493 (Bankr.Va.1984); *In re Schauer* 62 B.R. 526 (Bankr.Minn.1986). These cases acknowledge that an equity interest in a cooperative is property of a bankruptcy estate, but such is not immediately convertible into cash or otherwise available to discharge an indebtedness because redemption is at the discretion of the board of directors. In dicta, *Cosner* suggested an exception to this general rule:

> Arbitrary and capricious refusal of the board of directors to enable transfer, despite discretionary power in the bylaws might entitle the trustee in such event to equitable relief.

3 B.R. at 449.

Lamar suggests that the Board of Directors acted arbitrarily and capriciously in that they denied requests made by Lamar both before and after filing of its bankruptcy petition to set off its debt against its patronage equities. Lamar's manager, Loren Morey, recites in his affidavit of November 30, 1984, that MFA's Board of Directors had voted in the past to offset the debt of at least six different members. MFA responded that a decision by its board to compromise a debt under certain facts and circumstances at one point in time does not compel the board to honor all future requests for like treatment.

## II. C–STOCK CLAIM

Lamar was both a member and a trade debtor of defendant MFA. Cooperatives affiliated with MFA could participate in financing provided by Agmo Corporation. Defendant Agmo is a stock cooperative engaged in the business of financing retail sales of goods by MFA and its affiliated cooperative associations. It is formed, financed and operated much like Production

Credit System. Lamar became a part of Agmo in 1967.

Debtor Lamar filed adversary proceeding No. 84–0275–SW–S–2–11 against Agmo, asking the Court to order it to redeem Lamar's C–Stock after either payment or offset of Lamar's current indebtedness. Agmo requires its local exchanges to own C–stock in an amount equal to 10% of the outstanding loans to the exchange's patrons. Agmo had stopped a stock redemption plan whereby as necessary funds are generated it would redeem the equity interest of requesting members on an equitable basis. *In re Walker*, 48 B.R. 668 (Bankr. D.S.D.1985). However, Agmo asserts that concern over the financial health of the corporation caused its Board of Directors in 1981 to discontinue accepting requests for redemption of its capital stock. Nevertheless, Agmo received verbal assurances and an April 15, 1983 letter from Paul Johnson, Agmo vice president, that the stock would be redeemed when the loans were paid.

Lamar had previously had as much as $400,000.00 in outstanding patron loans. At the time of filing, debtor had $40,000.00 in Agmo C–Stock and at least $16,000.00 in Agmo patronage equities, with a debt to Agmo of $12,953.86. Lamar introduced testimony that it had been told that Agmo would redeem any C–Stock it had in excess of the $1,295.38 it would be required to hold as 10% of the outstanding debt. Lamar's requests for retirement of its C–Stock have been rejected.

### III.  PENSION CLAIM

Plaintiff Lamar also seeks $22,479.00 from the MFA Inc. Interim Retirement Plan and various individual trustees of the plan in adversary No. 85–0199–SW–S–2–11. The plan, which is fully regulated by ERISA, was formed on January 1, 1985 to assume and discharge the obligations of the MFA Employees Retirement Plan and to distribute to the participating employers on a proportionate basis the assets in excess of what was needed to fund the vested retirement benefits, with this asset distri-bution being the primary reason for dissolution of the old plan.

Plaintiff Lamar made its final payment to the MFA Employees Retirement Plan for the period ending December 31, 1983. It ceased making payments after filing of bankruptcy in January of 1984. Lamar never formally withdrew from the plan. The Board of Trustees voted to terminate Lamar, but never notified it. Despite such termination, MFA, Inc., as sponsoring employer, retained the responsibility of assuring that benefits were paid or otherwise discharged on behalf of those of Lamar's employees that had acquired vested pension benefits. The assets of these Lamar employees were transferred to the MFA, Inc. Interim Plan, which purchased annuity contracts from an insurance company to discharge the plan's obligations to them. After the plan discharged its liabilities, defendant MFA and the other sponsoring employers received the assets remaining in the plan.

Lamar contends that it is due $22,479.00 as its proportionate share of the paid-out assets. That figure is derived from the testimony of Thomas Cerneka, managing principal of the Employee Benefits Division of Tillingast, Nelson and Warren, the consulting actuary providing valuation of the defined benefit plan. MFA argues that Cerneka's data was prepared for settlement purposes only and is not accurate enough for admission as evidence.

Debtor's payments to the plan had been paid through December 31, 1983, and Lamar filed for bankruptcy before the next payment was due at the end of the first quarter in 1984. Following the filing of its Chapter 11 petition Lamar received no notice concerning the plan, its dissolution, the formation of the new plan, or the payout of the excess assets. Debtor also asserts that it is entitled under 11 U.S.C. 362(h) to actual damages plus costs and attorney fees and lost opportunity for the amount of the bond it posted in connection with its injunction preventing disposition of its reversionary interest.

## IV. CONCLUSION

■■■ A cooperative member's patronage credits constitute an interest in the cooperative association that is contingent and not immediately payable. The interest becomes due and payable only when the board of directors, in keeping with its by-laws, exercises its discretion and determines that such payments may be made without causing undue financial hardship to the association. Patronage credits are not an indebtedness of a cooperative association that is presently due and payable to the members, but they represent an interest that may be paid at some unspecified later date to be determined by the board of directors.

As the Kansas Supreme Court pointed out in *Atchison County Farmers Union Co-Op Association v. Turnbull*, 241 Kan. 357, 736 P.2d 917 (1987), "[t]he purpose of cooperative marketing is to promote the intelligent and orderly marketing of agricultural products through cooperation ... The paramount concern of such associations is to provide a means of marketing the products of their members, not the advancement of individual members." 736 P.2d at 919–20.

*In re Schauer*, 62 B.R. 526 (Bankr.D. Minn.1986), held that while debtor's interest in an accumulated revolving fund patronage account would become part of his bankruptcy estate under 11 U.S.C. § 541(a), the court could not order the co-op to redeem the unmatured certificates, nor could it order transfer of the patronage certificates absent authorization by the co-op's board of directors. This is because the trustee and the estate succeed only to the title and rights in property that the debtor had, and no better. 62 B.R. at 530, *citing* cases. As in the matter before us, both of the parties in *Schauer* cited *Cosner* for support. *Schauer* found for the co-op, declining to adopt by the rule suggested by *Cosner's* "arbitrary and capricious" language:

> This Court cannot vest plaintiff with new or expanded rights over the revolving fund which did not exist prior to Debtor's invocation of its jurisdiction ... Without

a showing of particularized discrimination against Plaintiff, it cannot be said that Bongard's Board is acting arbitrarily and capriciously ...

Lamar contends MFA was arbitrary and capricious in refusal to retire its patronage equity when it had done so previously for other members. The *Turnbull* decision once again provides guidance, *discussing Claassen, Executrix v. Farmers Grain Cooperative*, 208 Kan. 129, 490 P.2d 376 (1971), in which an executrix sought to recover a money judgment against a co-op based on credits earned by the deceased, who had been a member and patron during his lifetime. When the co-op in that case asserted that whether to pay patronage ledger credits to a decedent's estate was a matter of discretion for the board of directors, plaintiff complained that the board had paid such credits to other estates:

> The court determined, however, that it could not substitute its judgment for judgment of the board of directors and declined to become involved in the financial structure of the cooperative to determine whether the board of directors acted reasonably.

736 P.2d at 920, *citing* cases.

■■■ In conformity with public policy and all the cases discussed above, this Court finds that while it may under certain circumstances order patronage equity credits in a cooperative to be used to set-off a member's or former member's debt to the cooperative, such exercise of power should be restricted to those cases wherein there has been a clearly evidenced abuse of the otherwise sole discretion of the co-op's board of directors. As a practical matter, it is quite likely that debtor's real equity in the revolving fund is now less than the admitted debt to the co-op and that the co-op may be in only slightly better financial condition than the debtor.

■■■ Different facts and a slightly different policy underlying the Class C Participation stock issue convince this Court that Lamar should be allowed to retire the majority of the stock. While cancellation of loan participation stock upon default is still discretionary with a lender's board of di-

rectors, such stock is ordinarily retired as the amount of loan principal is reduced. And unlike the patronage equity situation, where it could only point to the more favorable treatment of previous members, Lamar was made specific oral and written promises that its C–Stock would be returned when it paid down its debt. The parties do not dispute that only $12,953.86 in debt remains. Therefore, Agmo is ORDERED to retire $38,704.62 of Lamar's C–Stock.

As to the pension fund question, this Court agrees with defendant that the sketchy data prepared for settlement negotiations cannot support an award of a specific amount, however it will not let Lamar's present bad fortune after a number of years of contributions to the retirement plan create a windfall for MFA and the current members to the detriment of Lamar's creditors. Lamar is entitled to its proportionate share of the reversion due to discontinuation of the previous pension plan. The Court will hear evidence from the parties as to how to properly calculate this amount, as well as any evidence the parties wish the Court to hear in regard to the costs of preventing distribution of these funds. Hearing will be held in the Greene County Court House Annex, 833 Boonville, Springfield, Missouri on Friday, September 4, 1987 at 9:00 A.M.

This Memorandum Opinion constitutes Findings of Facts and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.