835 F.2d 1222
 18 Collier Bankr.Cas.2d 127, Bankr. L. Rep. P 72,139
In re Gerald A. SCHAUER and Corrine A. Schauer, Debtors.
Samuel V. CALVERT, Trustee, Appellant,
v.
BONGARDS CREAMERIES, a cooperative association, Gerald
Schauer and Corrine Schauer, Appellees.
 No. 87-5064.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 1, 1987.
Decided Dec. 18, 1987.
 
 Leah R. Bussell, New Ulm, Minn., for appellant.
 William J. Fisher, Minneapolis, Minn., for appellees.
 Before McMILLIAN, JOHN R. GIBSON and FAGG, Circuit Judges.
 McMILLIAN, Circuit Judge.
 
 
 1
 Samuel V. Calvert, trustee in bankruptcy, appeals from a final judgment entered in the District Court[1] for the District of Minnesota affirming a decision of the bankruptcy court which held that the trustee could not transfer patronage margin certificates without the approval of Bongards Creameries (Bongards). Calvert v. Bongards Creameries, CIV No. 5-86-195 (D.Minn. Jan. 16, 1987). For reversal, Calvert argues that (1) the trustee's rights under 11 U.S.C. Secs. 363, 704, to sell property of the bankrupt estate are paramount to any by laws restricting transfer, (2) the transfer restrictions are not enforceable against the trustee, a bona fide purchaser, because the restrictions are not clearly noted on the face of the patronage margin certificates, and (3) the district court should invalidate the transfer restriction because of equitable considerations. For the reasons discussed below, we affirm.
 
 
 2
 Bongards, a farm cooperative organized under Minn.Stat. Sec. 308.06, issues patronage margin certificates, also called revolving fund certificates, to its farmer members or patrons. Bongards divides its aggregate "net margins," representing profits, among its patrons on an annual basis. A portion of each patron's annual net margin is paid to the patron in cash and the remainder is placed in a patron's revolving fund. Patronage margin certificates are evidence of the patron's ownership interest in Bongards and the patron's net margin held in the patrons' revolving fund.
 
 
 3
 Patronage margin certificates may be redeemed in cash with the consent of the board of directors of Bongards on a "first issued, first redeemed basis." Article 7, Sec. 4 of Bongards' bylaws provides that there shall be no discrimination between contributions received in the same fiscal year. Thus, if one patron's certificates for a given fiscal year are redeemed, all of the patrons who have certificates for the same fiscal year are entitled to redemption. In addition, Article 7, Sec. 5 of the bylaws provides: "No assignment or transfer of any interest in the revolving fund shall be binding on [Bongards] without the consent of the board of directors, nor until the same shall have been entered on the books of [Bongards] Thus, the board of directors has the discretion to determine whether a patronage margin certificate may be transferred, assigned or sold by a patron.
 
 
 4
 Gerald and Corrine Schauer were members of Bongards and were issued patronage margin certificates in the total amount of $40,531.15 for contributions for the fiscal years 1978-1984. On January 14, 1985, the Schauers' filed a voluntary Chapter 7 bankruptcy petition, and Calvert was appointed trustee of the Schauers' bankruptcy estate. All the Schauers' non-exempt property, including the patronage margin certificates, became the property of the bankruptcy estate. Calvert asked the board of directors of Bongards to redeem the Schauers' patronage margin certificates or to consent to the assignment or transfer of the certificates to third parties. The board of directors refused. This refusal was consistent with Bongards' prior practice. At the time of the filing of the appellate briefs, the board of directors had not redeemed any patronage margin certificates representing contributions for the fiscal years 1979-1984. In addition, the board of directors does not, as a matter of standard business practice, consent to any sale, assignment or transfer of patronage margin certificates.
 
 
 5
 In October 1985, Calvert initiated an adversary action under 11 U.S.C. Sec. 543(b) against Bongards in bankruptcy court, seeking a determination that the patronage margin certificates constituted property of the bankruptcy estate under 11 U.S.C. Sec. 541(a) and that Calvert as trustee had the authority to dispose of these patronage margin certificates by sale or other means of transfer. Bongards conceded, and the bankruptcy court determined, that the patronage margin certificates constituted property of the bankruptcy estate. In re Schauer, 62 B.R. 526 (Bankr.D.Minn.1986). The bankruptcy court held, however, that Calvert could not transfer the patronage margin certificates to third parties in the absence of Bongards' consent. Id. at 530-31. The bankruptcy court reasoned that Calvert as trustee acquired only those rights that the debtor had in the patronage margin certificates and the debtors could not transfer the patronage margin certificates without the consent of Bongards. Id. The bankruptcy court further found that the patronage margin certificates were not securities under Minnesota state law and, accordingly, were not covered by the provisions of Minn.Stat. Sec. 302A.429, subd. 2 (1985), which requires that restrictions on transferability appear as a conspicuous notation on the face of the certificate in order to be enforceable. Id. at 531-32. Finally, the bankruptcy court held that the six-year delay or longer in obtaining payment of the patronage margin certificates was not a sufficient equitable reason to allow Calvert as trustee to sell or transfer the certificates in the absence of Bongards' consent. Id. at 532.
 
 
 6
 The district court, in January 1987, affirmed the bankruptcy decision. Calvert v. Bongards Creameries, Civ. No. 5-86-195 slip op. at 4. The district court held that while courts in bankruptcy proceedings may void certain unreasonable restrictions, the mere filing of a bankruptcy petition did not require that all restrictions be voided. Id. at 2. The district court further found no compelling equitable considerations to justify the voiding of the restrictions. Id. at 3. This appeal followed.
 
 State Law Restrictions
 
 7
 Calvert first argues that federal bankruptcy law preempts state law and thus the trustee's power to transfer property of federal bankruptcy estate may not be restricted by state law or contract law. Citing Perez v. Campbell, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), Calvert argues that state law may not frustrate the purposes and objectives of federal bankruptcy law; thus, the "idiosyncrasies" of Minnesota property laws with regard to equity in a farm cooperative may not restrict the trustee's right to transfer property of the bankruptcy estate.
 
 
 8
 Federal bankruptcy law, according to Calvert, grants a trustee greater rights to dispose of property of the bankruptcy estate than the debtor held. Calvert specifically relies on 11 U.S.C. Sec. 704[2] which provides that the trustee has the responsibility of collecting and reducing to money the property of the bankruptcy estate as expeditiously as compatible with the best interests of the parties. Calvert also relies on 11 U.S.C. Sec. 363(b)(1),[3] which authorizes the trustee to sell property of the bankruptcy estate. Calvert interprets Sec. 363(b)(1) as providing a mechanism for the liquidation of the property of the bankruptcy estate and an allocation of the proceeds among competing claimants to the property of the bankruptcy estate.
 
 
 9
 Calvert's argument is without merit. First, there is no conflict between 11 U.S.C. Secs. 363(b)(1), 704, and state law which defines the debtor's rights in property of the estate. Sections 363(b)(1) and 704 do not expressly authorize the trustee to sell property contrary to the restrictions imposed by state and contract law. These sections are simply enabling statutes that give the trustee the authority to sell or dispose of property if the debtors would have had the same right under state law.
 
 
 10
 Although there are no cases directly on point, numerous courts have asserted the general principle that the trustee takes only those rights that the debtor had under state law. The Fourth Circuit, in Hovis v. Wright, 751 F.2d 714, 715-16 (4th Cir.1985) aff'g, In re Wright, 39 B.R. 623 (D.S.C.1983) recognized this limitation on the trustee's power to dispose of estate property. Accord In re Klayer, 20 B.R. 270, 272 (Bankr.W.D.Ky.1981) ("The rule is elementary that the estate succeeds only to the title and rights in the property that the debtor possessed"). In Matter of Professional Bar Co., 537 F.2d 339 (9th Cir.1976), the Ninth Circuit held that the trustee had to pay all state-mandated taxes before transfer of a liquor license. Id. at 340. The court further stated that the trustee could not evade the restrictions on transfer because the estate takes property subject to the same restrictions that it had before the bankruptcy. The court also held that the state law restraining transfer was not preempted by federal law. Id. Accord In re Farmers Markets, Inc., 792 F.2d 1400, 1402-03 (9th Cir.1986) (restrictions on the transfer of a liquor license until taxes had been paid were valid); In re Polycorp. Assoc., Inc., 47 B.R. 671, 672-73 (Bankr.N.D.Cal.1985) (trustee had to pay all taxes due before transferring a liquor license); In re Cosner, 3 B.R. 445, 448 (Bankr.D.Or.1980) (under the Bankruptcy Act of 1898, as amended, the capital reserve account of a debtor-patron of a farm cooperative was subject to transfer restrictions).
 
 
 11
 We hold that Secs. 363(b)(1) and 704 do not conflict with or invalidate the bylaws restriction on transferability of the patronage margin certificates. State law defines the debtor's interest in property which becomes part of the bankruptcy estate. Therefore, the district court did not err in declaring that Calvert as trustee could not transfer or assign the patronage margin certificates without the approval of Bongards.
 
 Conspicuous Notation Requirement
 
 12
 Calvert next argues that, under Minnesota state law, the absence of a notation on a certificate concerning the limitation on transferability renders the restriction unenforceable against the trustee, a bona fide purchaser. The bankruptcy court concluded that patronage margin certificates were not equity securities and thus were not subject to the notation requirement of Minn.Stat. Sec. 302A.429, subd. 2. In re Schauer, at 531.
 
 
 13
 Minn.Stat. Sec. 302A.429, subd. 2 provides: "Unless noted conspicuously on the face or back of the certificate or transaction statement, a restriction, even though permitted by this section, is ineffective against a person without knowledge of the restriction." Calvert cites Costello v. Farrell, 234 Minn. 453, 48 N.W.2d 557, 563 (1951), which interpreted the predecessor to Minn.Stat. Sec. 302A.429 to require that transfer restrictions be noted on the security in order to be enforceable against third parties. Calvert asserts that a bankruptcy trustee is, as a matter of law, a bona-fide purchaser for value under 11 U.S.C. Sec. 544 and thus, the limitation on transfer is unenforceable against the trustee. Calvert further argues that the patronage margin certificate is a security under Minnesota law and therefore subject to the notation requirement. A security under Minnesota law is "any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any property sharing agreement...."[4]
 
 
 14
 Bongards contends that Calvert's reliance on Minn.Stat. Sec. 302A.429[5] is misplaced because this section by its own terms applies only to corporations and Minnesota law[6] defines a corporation as an entity organized for profit. We agree. It is undisputed that Bongards is a nonprofit cooperative organized under Sec. 308.06. These cooperatives are not subject to the notation requirement. Minn.Stat. Secs. 308.06, subd. 3. 80A.15, subd. 2(j).[7] We thus hold that the notation requirement does not apply to patronage margin certificates and, accordingly, the absence of the transfer restriction on the certificates does not invalidate the transfer restriction.[8]
 
 Equitable Considerations
 
 15
 Calvert finally argues that there are equitable considerations which justify the voiding of the transfer restrictions imposed by Bongards. First, Calvert argues that the unsecured creditors have already experienced a lengthy delay in receiving payment from the bankruptcy estate and would be forced to wait an additional six or seven years for distribution of the assets. Second, this delay would mean that creditors will have to file amended income tax returns to collect earlier returns showing the debts as bad debts or will fail to report the distributions which will finally come to them from the bankruptcy estate. Calvert also asserts that Bongards has not acted in good faith in refusing to issue the certificates to the trustee and has otherwise resisted efforts to liquidate the patronage margin certificates.
 
 
 16
 Bongards responds that there are no compelling equitable reasons to void the transfer restriction. Bongards gives the following as reasons for the restriction: (1) unrestricted assignment, transfer, or sales of patronage margin certificates to persons who are not members of the cooperative could jeopardize Bongards' exempt tax status under 11 U.S.C. Sec. 521 (2) assignment, transfer, and sales would also create costly recordkeeping problems, and (3) the purpose of a cooperative association to return its net income only to its patrons would be frustrated by free transferability of the patronage margin certificates. Lastly, Bongards denies that it has acted in bad faith in resisting Calvert's efforts to dispose of the patronage margin certificates.
 
 
 17
 The bankruptcy court concluded that the record did not show or even suggest that the Bongards board of directors was acting arbitrarily and capriciously, discriminating against Calvert as a trustee, or taking any action in defiance of the bankruptcy court's jurisdiction or the trustee's status. In re Schauer, 62 B.R. at 530-31. The district court likewise found that there were no "compelling equitable considerations" which would justify ordering Bongards to permit the transfer. Calvert v. Bongards Creameries, No. 5-86-195, slip op. at 3. The district court recognized that third-party creditors may face delay in satisfaction of their claims until the Bongards board of directors authorizes the distribution of the funds. However, the district court noted that there was no threat that the debtors' equity would be forfeited. Id.
 
 
 18
 We hold that the district court did not err in concluding that there were no equitable considerations which would justify the voiding of the transfer restrictions. We recognize, as did the bankruptcy court, that this holding does not further one of the goals of the federal bankruptcy law, which is to encourage the expeditious administration of bankruptcy estates for the benefits of claimants. In re Schauer, 62 B.R. at 532.
 
 
 19
 However, to grant the relief requested would violate a more basic principle of bankruptcy law under the code, the recognition that the invocation of bankruptcy jurisdiction does not create new substantive rights in the property of the estate.... In this instance, the goal of administrative convenience must bow to a superior principle.
 
 
 20
 Id.
 
 
 21
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 The Honorable Robert G. Renner, United States District Judge for the District of Minnesota
 
 
 [2]
 11 U.S.C. Sec. 704(1): "The trustee shall--(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interest of the parties."
 
 
 [3]
 11 U.S.C. Sec. 363(b)(1): "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."
 
 
 [4]
 Minn.Stat. Sec. 80A.14, subd. 18
 
 
 [5]
 Id., Sec. 302A.429, subd. 2, provides in part:
 A written restriction on the transfer or registration of transfer of securities of a corporation that is not manifestly unreasonable under the circumstances and is noted conspicuously on the face or back of the certificate or transaction statement may be enforced against the holder of the restricted securities or a successor or transferee of the holder, including a pledgee or a legal representative. Unless noted conspicuously on the face or back of the certificate or transaction statement, a restriction, even though permitted by this section, is ineffective against a person without knowledge of the restriction.
 
 
 [6]
 Id. Sec. 302A.011, subd. 8, provides in part: "Corporation means a corporation, other than a foreign corporation, organized for profit and incorporated under or governed by this chapter."
 
 
 [7]
 Id., Sec. 308.06, subd. 3 provides: "Cooperative associations organized under or subject to the provision hereof shall be subject to the provision of Chapter 80A, except as specifically provided in 80A.15."
 Id. Sec. 80A.15, subd. 2(j), provides:
 The following transactions are exempted from Secs. 80A.08 and 80A.16: (j) The offer and sale by a cooperative association organized under chapter 308, of its securities when the securities are offered and sold only to its members, or when the purchase of the securities is necessary or incidental to establishing membership in such an association, or when such securities are issued as patronage dividends.
 
 
 [8]
 The district court held that patronage margin certificates are not in themselves equity securities subject to the requirements of Minn.Stat. ch. 302A, ch. 336, Art. 8. The court found that these certificates were distinct from shares of the capital stock in the cooperative, which are equity securities. Calvert v. Bongards Creameries, CIV. No. 5-86-195, slip op. at 12 (D.Minn. Jan. 16, 1987). Because we conclude that the conspicuous notation requirement of Sec. 302A.429 does not apply to cooperatives, we need not consider whether the patronage margin certificates are equity securities