675 P.2d 1007

**STATE of New Mexico,**
**Plaintiff-Appellee,**

v.

**Betty WOODWARD,**
**Defendant-Appellant.**

No. 7362.

Court of Appeals of New Mexico.

Dec. 27, 1983.

Paul Bardacke, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Janet Clow, Chief Public Defender, Henry R. Quintero, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

DONNELLY, Judge.

May an individual be criminally prosecuted for the improper removal of encumbered property contrary to NMSA 1978, § 30–16–18, where the document creating the alleged encumbrance fails to detail the property involved? The answer to the question posed involves an admixture of both our criminal statutes and provisions of the Uniform Commercial Code.

In January 1982, the defendant, Betty Woodward, purchased a mobile home from H.G. Fairchild and Jacqualynn Fairchild, in Roswell. The sale price of the mobile home was $25,000. Defendant was to pay $7,000 as a down payment and the balance of $18,000 was to be paid to sellers at the rate of $216 per month over a 15-year period, subject to 12% interest on the unpaid balance.

The defendant paid $250 on the down payment and signed a printed form entitled "Escrow Agreement" prepared by the sellers. The escrow document described the property which was the subject of the sale as follows:

> 1979 Town & Country Mobile Home "Cimmeron Model" as per serial number—to include both awnings, all skirting, all appliances washer, dryer, built in oven & range and refrigerator.

H.G. Fairchild also utilized a printed form to prepare a "Security Agreement and Financing Statement" dated January 22, 1982, which provided in part:

> Debtor Betty L. Woodward Mailing Address # 40 Langley St., Roswell NM 88201 herein called Debtor for valuable consideration grants to Secured Party H.G. or Jacqualynn G. Fairchild Escrow Agent—First Interstate Bank, P.O. Box 2057, Roswell NM 88201 * * * hereinafter called Secured Party, a security interest in the following property and any and all material increase, additions, accessions and substitutions, hereinafter called Collateral:

DESCRIPTION OF COLLATERAL

*1979 Town CIM SR# 80146397.* [Emphasis added.]

In April, 1983, defendant moved to Montana leaving the mobile home in Roswell. Shortly thereafter, defendant was arrested in Montana based upon a criminal complaint charging that she committed the improper sale, disposal, removal, or concealing of encumbered property, contrary to Section 30-16-18.

The statute under which defendant was charged, provides in applicable part:

Improper sale, disposal, removal or concealing of encumbered property consists of any person knowingly, and with intent to defraud, selling, transferring, removing or concealing, or in any manner disposing of, any personal property upon which *a security interest,* chattel mortgage or other lien or encumbrance *has attached or been retained,* without the written consent of the holder of such security interest, chattel mortgage, conditional sales contract, lien or encumbrance. [Emphasis added.]

Section 30-16-18.

At defendant's preliminary hearing, the State asserted that the property which defendant unlawfully disposed of, consisted of two awnings, a washer, dryer, and a refrigerator, which items were allegedly removed from the mobile home being purchased by her. The magistrate bound defendant over to the district court for trial on all the alternatives of the offense charged in the criminal complaint. However, the information charged defendant with "removal" only. The information charged that the "removal" was of personal property upon which there was either a security interest, chattel mortgage or other lien or encumbrance; however, there is no claim other than a "security interest" is involved in this case. Defendant's motion to dismiss the information was denied; we granted defendant's application for an interlocutory appeal.

Section 30-16-18 was enacted by 1963 N.M.Laws, ch. 303, § 16-18, as part of the Criminal Code. The present statute as enacted, was substantially rewritten and combined several similar prior criminal statutes. *See* NMSA 1953, §§ 40-21-41 and 40-21-44. Section 30-16-18 was adopted following the enactment of the Uniform Commercial Code in 1961, and expressly added to the types of encumbrance to which the criminal statute applied, "personal property upon which a *security interest* * * * has attached or been retained * * *." (Emphasis added). *Compare* former Sections 40-21-41 and 40-21-44. The term "security interest" is defined in the Uniform Commercial Code, NMSA 1978, § 55-1-201(37), as an interest in personal property or fixtures which secures payment or performance of an obligation. By adding the reference "security interest" to Section 30-16-18, the legislature recognized a new type of encumbrance set out in the Uniform Commercial Code.

The clear purpose of Section 30-16-18 was to provide protection to a secured party or mortgagee from the improper removal or disposition of encumbered or secured property by making such acts a crime. *Compare State v. Ferguson,* 221 Kan. 103, 558 P.2d 1092 (1976) (defendant found guilty of impairing a security interest by failing to account for the proceeds of a sale of secured personal property). Although the Uniform Commercial Code specifies that it is to be liberally interpreted, NMSA 1978, § 55-1-102, criminal statutes proscribing the unlawful removal of encumbered property are generally strictly construed. *Hubbell v. State,* 585 P.2d 369 (Okl.Cr.1978). We interpret Section 30-16-18 to require a showing that a valid security interest in the encumbered property has properly attached or has been retained, *and* that the property has been either unlawfully sold, disposed of, removed, transferred or concealed.

Resolution of whether the Fairchilds have a valid security agreement in the contents of the mobile home sold to defendant is determinative of the issue involved in this appeal. Because this case only concerns the enforceability of the security agreement as between the parties and does not involve rights of third parties or credi-

tors, issues concerning filing or perfection of a security interest are not discussed here. *See* NMSA 1978, § 55–9–203, Official Comment 1.

The formal requisites necessary to create a security interest in personal property where the debtor is in possession of the goods (*see* NMSA 1978, § 55–9–113), are detailed in Section 55–9–203(1). The latter statute provides in applicable part:

[A] security interest *is not enforceable against the debtor or third parties unless:*

(a) the collateral is in the possession of the secured party; or

(b) *the debtor has signed a security agreement which contains a description of the collateral * * *.* In describing collateral, the word "proceeds" is sufficient without further description to cover proceeds of any character. [Emphasis added.]

▪ Where the creditor does not retain possession of the personal property, and in the absence of a written security agreement meeting the formal requisites of Section 55–9–203, the security agreement is not enforceable in a civil action against the debtor.

The description necessary to meet the requirements of Section 55–9–203 is defined in NMSA 1978, § 55–9–110 which states: "For the purposes of this article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." This rule liberalizes the former requirement that descriptions of property were to be exact and detailed in their provisions. *See* Official Comment to Section 55–9–110.

▪ It is undisputed that the Fairchilds have a valid security interest in the mobile home. *See In re Richards*, 455 F.2d 281 (6th Cir.1972); *Personal Thrift Plan of Perry v. Georgia Power*, 242 Ga. 388, 249 S.E.2d 72 (1978); *Still Associates, Inc. v. Murphy*, 358 Mass. 760, 267 N.E.2d 217 (1971). However, while the mere description of the mobile home by model and serial number is sufficient to identify the mobile home and its accessions as collateral under the security agreement, it is insufficient to identify the existence of a security interest in the personal property contained in the mobile home. As stated in *Personal Thrift Plan of Perry:* "[T]he purpose of the description of the collateral in an unfiled security agreement is not to give notice as on a financing statement *but is to provide identification of the collateral so as to avoid disputes over its identity.*" 242 Ga. at 390, 249 S.E.2d at 74. [Emphasis added.]

▪ The security agreement is the contract between the parties and specifies what is the security interest. Thus, the security agreement has a different function from that of the financing statement which functions to notify third parties that an item may be subject to a prior interest. *American Restaurant Supply Co. v. Wilson*, 371 So.2d 489 (Fla.App.1979). Because the security agreement identifies the items of collateral, greater particularity is required than in the financing statement. *Id. See also Jones & Laughlin Supply v. Dugan Prod. Corp.*, 85 N.M. 51, 508 P.2d 1348 (Ct.App.1973) (since no security interest can exist without a security agreement, when there is a conflict between the description in the financing statement and the security agreement, the latter prevails); *accord Matter of Permian Anchor Services, Inc.*, 649 F.2d 763 (10th Cir.1981).

In *Mobile Discount Corp. v. Apache Trailer*, 122 Ariz. 141, 593 P.2d 695 (App. 1979), the determinative issue was whether a sales contract entered into between the buyer of a mobile home and the seller created a security interest in furniture that was supposed to be in the mobile home. The security agreement on its face granted a security interest in a " '[m]obile [h]ome and all *attachments* and *equipment* * *' " and on the reverse side had a paragraph with additional terms under which it was agreed that the word "goods" meant " 'the mobile home described above and all parts, accessories, *furnishings* and equipment whether or not described above * * *.' "

122 Ariz. at 142, 593 P.2d at 696. (Emphasis in original.) The following paragraph then granted to the seller a security interest in " 'the *goods* described on the reverse side.' " *Id.* (Emphasis in original.) The court held a valid security interest existed in the furniture, reasoning that the front of the contract had to be read in conjunction with the additional terms. When so read, a security interest was created in the furniture because the definition of "goods" included "furnishings." 122 Ariz. at 143, 593 P.2d at 697.

 In the instant case, the security agreement only lists the model, year and serial number of the mobile home itself. There is no reference to the contents or other goods in the mobile home so as to reasonably identify consumer goods located therein. The issue as to the sufficiency of a description of collateral in a security agreement is a question of law for determination by the court and is not an issue for the jury. *Bank of Cumming v. Chapman,* 245 Ga. 261, 264 S.E.2d 201 (1980). The test of the sufficiency of a description of property, is whether the description does the job it is assigned to do, namely, to make possible the identification of the thing or items described. *First State Bank of Nora Springs v. Waychus,* 183 N.W.2d 728 (Iowa 1971); *In re Munger,* 495 F.2d 511 (9th Cir.1974). The security agreement listing only the model and serial number of the mobile home is insufficient to reasonably identify the washer, dryer or refrigerator as goods upon which a security interest exists. These items are normally not accessions or fixtures.

 The State does not contend that the description of the mobile home by year, model and serial number describes the awnings, washer, dryer and refrigerator. Rather, the State contends these items could be included in the security agreement as either "additions" or "accessions," and there is a factual question as to whether the items were "additions" or "accessions." The State contends the motion to dismiss was properly denied on this basis. We agree only to the extent that a factual question exists as to whether the *awnings* were accessions to the mobile home so that a security interest might have attached to them. The issue of accession is a question of fact. *Matter of Permian Anchor Services, Inc.*

NMSA 1978, § 55–9–314 defines accessions as goods which are installed in or affixed to other goods. However, this section concerns only priority disputes and does not state when goods are accessions for the purposes of deciding whether a security interest in the principal collateral also reaches those goods.

Under common law, it is generally accepted that:

[W]here the articles later attached to * * other principal article[s] of personal property become so closely incorporated with the principal article that they cannot be identified and detached therefrom without injury to the * * * other principal article, such articles become a part of the * * * principal article to which they are so attached and will pass by accession to the one having a chattel mortgage or other lien upon the principal article * *. But when the articles added can be readily identified and detached without injury to the principal * * * article, they do not pass by accession. * * *

*Goodrich Silvertown Stores, Etc. v. Pratt Motor Co.,* 198 Minn. 259, 261–62, 269 N.W. 464, 465 (1936); *see also Aero Corporation v. Associated Aerial Survey Co.,* 184 F.Supp. 821 (D.Maryland 1960); *Mixon v. Georgia Bank & Trust Co.,* 154 Ga.App. 32, 267 S.E.2d 483 (1980); *In re Williams,* 12 U.C.C.Rep.Serv. (Callaghan) 990 (1973); *see generally* Nickles, *Accessions and Accessories Under Pre-Code Law and U.C.C. Article 9,* 35 Ark.L.Rev. 111 (1981).

In *Mixon v. Georgia Bank & Trust Co.,* the court stated that "[w]hether a chattel is an 'accession' depends upon the relationship that such chattel bears to another." 154 Ga.App. at 32, 267 S.E.2d at 484. The court rejected an argument that a security interest automatically reaches goods " 'installed in or affixed' " (*see* Section 55–9–314), to the main collateral because "the

Code does not indicate the degree to which one chattel must be affixed to another in order to constitute an accession." 154 Ga. App. at 33, 267 S.E.2d at 484. The court held that the determination of what constitutes an accession must be based on common law principles, "the lesser chattel must 'form such an integral part' of the greater chattel and must be 'so attached to it' as to constitute 'one and the same thing.'" *Id.* citing *Passieu v. B.F. Goodrich Co.*, 58 Ga.App. 691, 692, 199 S.E. 775, 776 (1938).

 In the instant case the security agreement fails to sufficiently describe three of the items of property which defendant was charged with removing, namely, the washer, dryer and refrigerator; it follows that those items of property were not encumbered property under Section 30–16–18, and the information as to such property is subject to dismissal. Because a factual issue remains as to whether the awnings were accessions, the trial court correctly concluded that further evidence was necessary as to such property. We remand for further proceedings consistent herewith. If it is determined that the awnings do not constitute accessions, then the information must be dismissed in its entirety because of the inadequacy of the description of those items. *See Jones & Laughlin Supply v. Dugan Prod. Corp.* If the awnings are determined to be accessions, description of the mobile home would suffice to include those items and the motion to dismiss as to such property was properly denied.

IT IS SO ORDERED.

WOOD and HENDLEY, JJ., concur.