**In re Glen Wilson SHIFLETT, Joy Fulk Shiflett, Debtors.**

**John G. LEAKE, Trustee, Plaintiff,**

v.

**The FIRST NATIONAL BANK OF BROADWAY, et al., Defendants.**

Bankruptcy No. 5–83–00286.

Adv. No. 5–83–0129.

United States Bankruptcy Court, W.D. Virginia, Harrisonburg Division.

July 12, 1984.

Dale A. Davenport, Harrisonburg, Va., for debtors.

John G. Leake, Harrisonburg, Va., trustee/plaintiff.

Douglas T. Stark, Harrisonburg, Va., for trustee.

William E. Shmidheiser, III, Harrisonburg, Va., Counsel for First Nat. Bank of Broadway, defendant.

**MEMORANDUM OPINION AND ORDER**

H. CLYDE PEARSON, Bankruptcy Judge.

The issue before the court is whether or not the Defendant, First National Bank of Broadway ("Bank") has a perfected security interest in funds held by Valley of Virginia Cooperative Milk Producers Association ("Co-op") retained from Debtors' milk sales.

On July 18, 1983, the Debtors filed their Chapter 7 liquidation petition in this court and, thereafter, on October 26, 1983, the Trustee filed this adversary proceeding to determine the validity, priority, and extent of the Bank's lien upon the funds retained by the Co-op of approximately $45,000.00.

The Debtors' milk produced from their dairy farm was sold to the Co-op, which thereafter marketed the same. As a member of the Co-op, the Debtors were paid the wholesale price for their milk at the time of sale to the Co-op. Thereafter, the Co-op resold the milk at retail and the profits are allocated to individual accounts for the members, depending on the amount of milk sold to the Co-op. The profits are held in a capital reserve account allocated to each member. Periodically, the Board of Directors, pursuant to their by-laws and charter, vote to distribute the reserve account to the members in the inverse order of the age of the accounts so that after a number of years of membership, members may receive distribution of their older patronage accounts on an annual basis.

Some time prior to the petition, Debtors obtained a loan from the Bank. To secure the Bank's loan, the Debtors granted to the Bank a properly perfected security interest in collateral described as follows:

"... all accounts and accounts receivable, now existent or hereafter created; proceeds of collateral are also covered. Proceeds of products of collateral are also covered."

The Trustee contends that the funds held by the Co-op constitutes a right to receive a distribution from patronage accounts and is not an "account or account receivable" but, instead, is a capital account, hence a "general intangible". If the funds retained by the Co-op is a "general intangible", then the Bank is not secured.

*Virginia Code* § 8.9–106 is the governing Uniform Commercial Code statutory provision bearing on this issue. This Section defines both "accounts" and "general intangibles" thusly:

"... 'Account' means any right to payment for goods held or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance.

" 'General intangible' means any personal property (including things in action) other than goods, accounts, chattel papers, documents, instruments, and money..."

No case in point arising in this jurisdiction has been found. The case of *In re Varney Wood Products, Inc.*, 458 F.2d 435 (4th Cir.1972), cited in counsels' briefs, dealt with the definition of "account". The court held that "accounts receivable" was a sufficient description to perfect a security interest in "accounts", stating that all that is required under the Code is that a financing statement be sufficiently descriptive so as to reasonably generate further inquiry. This case renders little assistance to the court upon the issue. Its primary thrust is that the Code should be liberally construed to accomodate its commercial purpose.

Section 8.9–106 specifically defines both an "account" and a "general intangible", making each mutually exclusive of the other. The difficulty in resolving the issue is determining precisely the classification of the retainage.

Counsel filed with the court a copy of the Articles of Incorporation and By-Laws of the Co-op. Article III, § 2 of the By-Laws refers to the retainage as property rights and interests of the respective patrons, members and non-members alike.

"... Upon the termination of any membership, all of the *rights and interests* of said member in the Association shall be cancelled, and such member shall be entitled only to payment or credit for the equitable appraised cash value of his *property rights and interests* in the Association as conclusively determined by the Board of Directors. No action taken hereunder shall impair the obligations or liabilities of either party under any contract which may be terminated only as provided therein." [emphasis added]

The retainage shall be evidenced either by certifications or of equity or credits in the capital reserve accounts of the respective patron, to be disbursed pursuant to action of the Board of Directors. Article IV, § 2 defines the interests of patrons as "capital accounts".

"... All deductions or retentions remaining in the hands of the Association after paying or providing for paying all of the operating and maintenance costs and expenses of the Association shall be credited to the *capital accounts* of its patrons, members and nonmembers alike, on a patronage basis, namely, shall be evidenced either by certificates of equity or credits in the capital reserve accounts of the patrons hereinafter provided and as prescribed from time to time by the Board of Directors. Certificates of indebtedness heretofore issued by the Association shall be treated as though they were certificates of equity. Funds evidenced by certificates of equity or funds derived from any source shall, when, in the sole opinion of the Board of Directors, they are not necessary for the proper financing of the operations of the Association, be devoted to the refunding of the oldest outstanding series of certificates. Such certificates shall be issued in annual series, each certificate in each series upon its face being identified by the year in which it is issued, and each series shall be retired fully or on a *pro rata* basis, only at the direction of the Board of Directors, in the order of issuance, by years, as funds are available for that purpose. Notwithstanding the foregoing, the Board of Directors shall have the power, from time to time and at any time, to pay off or retire or secure a release or satisfaction of any certificate in compromising or settling a dispute between the holder thereof and the Association or in connection with the settling or winding up of an estate. [emphasis added]

"Such certificates shall bear such rates of interest and only such rate of interest, not in excess of 6%, as the Board of Directors in its sole discretion may from time to time prescribe without any obligation on the part of the Board of Directors and the Association to pay interest on such certificates. A record of all holders of such certificates shall be kept and maintained by the Association and certificates shall be transferable only on the books of the Association, and no transfer of such certificates shall be binding upon the Association unless so transferred.

"*All other debts of the Association, both secured and unsecured, shall be entitled to priority over all outstanding certificates.* [emphasis added]

"If the whereabouts or proper address of any member or patron who is entitled to receive a payment on any certificate or allocation is unknown at the time such payment becomes due and remains unknown for a period of five (5) consecutive years, thereafter the Board of Directors may at any time after such period of five (5) years has elapsed declare the amount so payable to be forfeited and direct that such amount be credited to the earnings of the Association for the then current year."

Therefore, the payment of the capital account is payable conditionally at the instance of the Board of Directors and, further, subject to forfeiture. The amount due is always undetermined until the Board of Directors decides to distribute such funds. Under the definition of "account" in *Virginia Code* Section 8.9–106, there must be a "right to payment". Under the by-laws of the Co-op, any right of payment does not exist. Payment of any sums from the capital account is subject to action of the Board of Directors. It is also subject to a prior claim of the Co-op's creditors, both secured and unsecured. It appears to be an interest in the nature of capital stock of a corporation. Certainly, if it were an "account" or "account receivable", it would not normally be subordinate to the claims of the Co-op's other creditors.

In *Clarke County Cooperative v. Read*, 243 Miss. 879, 139 So.2d 639, 641 (1962), the court stated:

"It is well settled that equity credits allocated to a patron on the books of a cooperative do not reflect an indebtedness which is presently due and payable by the cooperative to such patron. Such equity credits represent patronage dividends which the board of directors of a cooperative, acting under statutory authority so to do, has elected to allocate to its patrons, not in cash or other medium of payment which would immediately take such funds out of the working capital of the cooperative, but in such manner as to retain capital for the cooperative..."

See also *In re F.L.F. Farmers' Co-op, etc.*, 170 F.Supp. 497 (D.C.N.J.1958), where the court pointed out that such certificate of interest was not a credit of the co-op within the meaning of the Bankruptcy Act of 1898 as they did not represent debts due and owing by the co-op.

It is, of course, undisputed that these patronage funds are property of the estate recoverable by the Trustee. 11 U.S.C. § 541.

In the case of *In re Cosner*, 3 B.R. 445 (Bankr.D.Ore.1980), arising under essentially similar facts, the court there was dealing with the designation of the capital reserve accounts in another co-op operation. The court, after reviewing the authorities and the nature of the retained funds, concluded that the capital reserve account was a general intangible due to its nature and the manner in which it is constituted and held by the co-op. There does not appear to be any substantial or material difference from this case.

It is the conclusion of this court that the well-reasoned opinion of Judge Luckey in *Cosner* should be followed in the case at bar and, accordingly, the retained fund is found to be a general intangible and free of any security interest of the Bank as against the rights of the Trustee. It is SO ORDERED.

The Trustee may pursue appropriately the recovery of said funds as an asset of this estate.

Service of a copy of this Memorandum Opinion and Order shall be made by mail to the Debtors, Debtors' Attorney, Trustee, Counsel for Trustee, to Counsel for Defendant Bank, and to the Defendant Co-op.