793 P.2d 851

**VALLEY FEDERAL SAVINGS BANK, f/k/a Valley Federal Savings and Loan Association, a federally chartered stock savings bank, Plaintiff,**

v.

**Vernon O. STAHL and Marcia Stahl, his wife, d/b/a V & M Stahl Dairy, et al., Defendants.**

**ASSOCIATED MILK PRODUCERS, INC., Cross–Claimant and Cross–Defendant–Appellant,**

v.

**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Cross–Claimant and Cross–Defendant–Appellee.**

No. 18585.

Supreme Court of New Mexico.

June 18, 1990.

R. Russell Rager, Albuquerque, for appellant.

Sheehan, Sheehan & Stelzner, Cindy S. Murray, Albuquerque, for appellee.

## OPINION

RANSOM, Justice.

This action was initiated when Valley Federal Savings Bank sued Vernon and Marcia Stahl, doing business as V & M Stahl Dairy, to collect money due and to foreclose a real estate mortgage and personal property liens. On this appeal we consider only the issue of priority remaining between two cross-claiming subordinate lienholders, appellant Associated Milk Producers and appellee Bank of America. The crossclaims were presented to the district court upon a stipulation of facts and issues.

Associated Milk Producers is a cooperative marketing association of dairy farmers organized under and governed by the Capper–Volstead Act. *See* 7 U.S.C. §§ 291, 292 (1988). The Stahl Dairy was a member producer of the Association. Under its bylaws, the Association retained, as a deduction from the proceeds of each month's sale of the Stahls' raw milk, a capital contribution ("capital retains") that was evidenced by an annual per unit capital retain certificate. During the six to seven years that the Stahls were members of the Association, a total of $134,276.89 was credited to and accumulated in the Stahls' capital retains account. By reason of the Stahls' purchase of dairy equipment from the Association in July of 1984, the Stahls owed the Association the sum of $71,124.72, plus interest, costs, and attorney's fees, less a credit of $7,500 for a payment received from Valley Federal Savings.

The capital retain certificates and the capital contributions represented thereby were non-negotiable and non-transferable, and could be redeemed only in accordance with the terms and conditions contained in the bylaws of Associated Milk Producers, when and as determined by its board of directors. The bylaws reserved to the Association a first lien upon a member's capital retains to the extent of any claim the Association had against the member. To further evidence the Association's security interest in the Stahls' dairy equipment, the Stahls signed security agreements. Financing statements were filed with the county clerk on August 20, 1984. The description of collateral included: "All equities issued or to be issued by [Associated Milk Producers]." This latter description is claimed by the Association to describe the Stahls' capital retains. The bank does not dispute such claim. The Stahls' related security agreements with the Association contain the same quoted language as that in the financing statements.

Incident to loan agreements between the Stahls and Bank of America, the Stahls granted to the bank a security interest in collateral later described in the financing statement as: "all accounts and contract rights arising from the sale or other dispo-

sition of * * * dairy products." The financing statement was filed with the county clerk on December 7, 1983. Associated Milk Producers appeals the court's grant of priority in the capital retains to Bank of America, which the court granted because the latter's security interest became perfected on December 7, 1983, whereas the security interest of the Association was not perfected until August 20, 1984. Relying upon Article 9 of the Uniform Commercial Code, NMSA 1978, Sections 55–1–101 to 55–12–108 (Orig.Pamp., Repl.Pamp.1987, & Cum.Supp.1989), the bank's position has been that the creditor who perfects its security interest first has priority in the collateral, Section 55–9–312(5)(a), and the date the financing statement is filed establishes the date of perfection no matter when the security agreement was signed. Section 55–9–303.

The Association claims the trial court incorrectly concluded that the Stahls had rights in and to their capital retains that could be made subject to a lien (i.e., it argues capital retains are not property of the Stahls in which they could grant a security interest), and it alternatively claims that the lien reserved under its bylaws [1] and evidenced by its financing statements and related security agreements are first in priority because "accounts and contract rights" as used in the bank's financing statement of December 7, 1983, did not adequately describe the capital retains. The capital retains account, argues the Association, is a "general intangible" and is not an "account" or "contract right" under the express provisions of the UCC and other applicable authorities.

The Association also claims it has a right of set-off as in when its board of directors may determine and approve redemption of the Stahls' account. The basic premise of this claim is the Association's argument that, whereas Stahl had no right in the capital retains upon which to grant a lien to the bank, the Association's lien was re-

served by its bylaws independent of the UCC. We see this claim as subsumed in and resolved by our consideration of the questions of attachment, perfection, and priority of the respective liens reserved, whether under the bylaws of the Association or other security agreements.

■ *The property interest in capital retains.* A member's right to payment of the capital retains is governed by the bylaws of the Association. *In re Shiflett*, 40 B.R. 493, 495 (Bankr.W.D.Va.1984). The bylaws provide that Associated Milk Producers "may retain from the proceeds received with respect to the sale of products marketed for each patron an amount which is fixed without reference to net earnings" and which "shall be considered a capital contribution." The member must treat as income, in the taxable year in which he receives the capital retain certificate, the amount of capital retains allocated to him. Additionally, the capital retains "shall be subordinated to the claims of [the Association's] creditors and shall not be subject to realization or anticipation." The capital retains may also be used to offset net operating losses that the Association may incur. The board of directors may redeem capital retain certificates if it determines that the redemption will not impair the financial condition of the Association. In the event of the dissolution of the Association, all money and assets available for distribution "shall be ratably apportioned and paid to members * * * on the basis of the balances remaining in the patronage equity and capital accounts * * *."

In short, then, the capital retains are income to the member, in the form of an equity interest. They are subject to the claims of the creditors of Associated Milk Producers, and to being used to offset net losses of the Association. The redemption of certificates is at the discretion of the board of directors.

---

**1.** The relevant bylaw states: "The Association shall have a first lien upon all such amounts to the extent of any claim the Association has against the respective member-patron or holder of such account." Associated Milk Producers claims this language creates a contractual lien, not controlled by the Uniform Commercial Code rules for the creation of liens. Associated Milk Producers cites no authority for this proposition.

A capital retains account virtually identical to that in the present case was described as a general intangible in *Shiflett*, 40 B.R. at 495. A general intangible is "any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments and money." Section 55–9–106. The *Shiflett* court decided that the capital retains were a general intangible and not an account because no "right to payment" [2] existed since the retains were subject to use in satisfying the debts of the Association. *Id.* at 495. The court said the retains were akin to a capital stock interest in a corporation. *Id.* Other courts also have classified capital retains (and patronage credits, which are similar) as general intangibles. *In re Axvig*, 68 B.R. 910, 917 (Bankr.D.N.D.1987); *In re Cosner*, 3 B.R. 445, 448 (Bankr.D. Ore.1980). We agree.

■ *Perfecting a security interest in capital retains.* The attachment, perfection, and priority of a security interest in capital retains, therefore, are governed by Article 9 of the UCC, which specifically applies to general intangibles. *See* § 55–9–103(3); *see also In re Axvig*, 68 B.R. at 917–18; *In re Shiflett*, 40 B.R. at 494; *In re Cosner*, 3 B.R. at 448. For a security interest to be enforceable against the debtor, the security interest must first attach, and then be perfected. For a security interest to attach, the debtor must have rights in the collateral, Section 55–9–203(1)(c); and, upon the authority discussed above, we hold that the capital retains are property in which a debtor can grant a security interest. *See, e.g., In re Axvig*, 68 B.R. at 917–18; *In re Cosner*, 3 B.R. at 448.

■ The perfection of any such security interest in general intangibles is dependent upon an adequate filing. Sections 55–9–302(1), –305. Associated Milk Producers claims that the description contained in the financing statement filed by Bank of America on December 7, 1983, did not adequate-

ly describe the capital retains. The test for the adequacy of a description is whether it does the job it was assigned to do. *State v. Woodward*, 100 N.M. 708, 712, 675 P.2d 1007, 1011 (Ct.App.1983). The purpose of a financing statement is to notify third parties of the possibility of prior encumbrances and alert them to the need for investigation. *Mogul Enterprises, Inc. v. Commercial Credit*, 92 N.M. 215, 217, 585 P.2d 1096, 1098 (1978); *accord Consolidated Equipment Sales, Inc. v. First Bank & Trust Co.*, 627 P.2d 432, 436 (Okla.1981) (purpose of financing statement is to place inquiring party on guard to further inquiry); *see also* J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* p. 961 (2d ed.1980) (purpose of financing statement is to put third parties on inquiry notice of existence of security agreement).

Whether the description of the collateral is adequate is a question of law, and not of fact. *State v. Woodward*, 100 N.M. at 712, 675 P.2d at 1011. The issue on this appeal, therefore, comes down to whether as a matter of law the description "all accounts and contract rights arising from the sale or other disposition of * * * dairy products" is sufficient to put third parties on inquiry notice of a prior encumbrance on the capital retains. Bank of America claims that the phrase "contract rights" describes the capital retains. It does not seek to include the retains as an "account," which by definition requires a right to payment. Section 55–9–106.

The term "contract right" is no longer used in Section 55–9–106, but was previously defined in that section as "any right to payment not yet earned by performance and not evidenced by an instrument or chattel paper." NMSA 1953, Repl.Vol. 8 Part 1, § 50A–9–106 (1962). Contract rights for goods and services fall under the amended definition of accounts that currently includes any right to payment, whether or not it has been earned by performance. As discussed above, despite

2. An account is defined as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance." NMSA 1978, § 55–9–106 (Repl.Pamp.1987). It is also defined in the official comment to Section 55–9–106 as "ordinary commercial accounts receivable."

their own performance, the Stahls had no right to payment of the money in their capital retains account. *See In re Shiflett,* 40 B.R. at 495 (because capital retains were subject to satisfying the debts of the cooperative, no right to payment existed). Because no right to payment existed, capital retains would fall outside the definition of contract right just as they fall outside the definition of account.

The question of law before us, however, is whether the description in the financing statement was sufficient to put third parties on inquiry notice of a prior encumbrance on capital retains. For this purpose, we eschew technical distinctions. A description of apples would not, of course, put a third party on inquiry notice about a prior encumbrance on oranges. At the same time, the description "contract rights arising from the sale or other disposition of dairy products" was sufficient to put a third party on inquiry notice about a prior encumbrance on a property interest in capital retains arising from the sale of dairy products. Under the bylaws of the cooperative marketing association of which the debtor dairyman was a member producer, the debtor had a contractual right (in a non-technical sense) to the capital retains held by the coop, and the bank's financing statement adequately gave notice to the public that the bank claimed an interest in this right. The district court did not err in finding that Bank of America had a perfected security interest in the Stahls' capital retains.

The judgment of the district court is affirmed.

IT IS SO ORDERED.

SOSA, C.J., and MONTGOMERY, J., concur.