1998-NMCA-011

953 P.2d 309

**AVLIN INC., Plaintiff–Appellant,**

v.

**Terry MANIS, d/b/a Autos II, Inc., Defendant–Appellee.**

**No. 17407.**

Court of Appeals of New Mexico.

Dec. 18, 1997.

Thomas F. Hooker, Jr., Thomas F. Hooker, Jr. & Associates, Albuquerque, for Plaintiff–Appellant.

William F. Aldridge, Lynch, Printz, Aldridge & Grammer, P.A., Albuquerque, for Defendant–Appellee.

## OPINION

ARMIJO, Judge.

1. This is a dispute between two secured lenders both of which claim a superior interest in sale proceeds for the same three automobiles.

2. Plaintiff Avlin, Inc. was a floor plan financier for Affordable Auto Sales, a used car dealer which is not a party to this litigation. Plaintiff claims priority to these sale proceeds pursuant to a general security agreement it had with Affordable which, it argues, included the three automobiles along with the rest of Affordable's inventory. However, Affordable did not obtain the three vehicles in question from its loan with Avlin. These vehicles were owned by Defendant Autos II, another automobile supplier, which sold them to Affordable for resale to the public but retained possession of the certificates of title until it was paid. Affordable received $10,950 for the three vehicles but did not pay either Autos II or Avlin.

3. Autos II challenges the validity of Avlin's security agreement, asserting that Avlin failed to describe the collateral sufficiently as required by statute, and accordingly Autos II claims a superior interest in the proceeds. The trial court granted summary judgment for Autos II. On appeal, the parties agree that there is no genuine issue of material fact, but dispute the legal effect of the facts in this case. *See generally Silva v. Town of Springer*, 1996 NMSC 022, ¶ 5, 121 N.M. 428, 912 P.2d 304 (stating standard for reviewing summary judgment). We determine that the trial court was correct in ruling that Autos II was entitled to judgment as a matter of law because Avlin failed to perfect its security interest in the vehicles. We also affirm the award of attorney fees to Autos II as a sanction against Avlin for non-compliance with Rule 1–056(D), NMRA 1997.

## I. CHALLENGE TO THE DESCRIPTION OF COLLATERAL

4. Avlin, as lender, entered into a security agreement with Affordable as borrower. The only issue concerning the validity of the security agreement is whether it meets the requirement of NMSA 1978, Sections 55–9–203(1) and –203(1)(a) (1996), which together state, in relevant part, "a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless ... the debtor has signed a security agreement that contains a description of the collateral."

5. We review the sufficiency of the description as a matter of law. *See State v. Woodward*, 100 N.M. 708, 712, 675 P.2d 1007, 1011 (Ct.App.1983). A description of collateral "is sufficient whether or not it is specific if it reasonably identifies what is described." NMSA 1978, § 55–9–110 (1985). "The test of the sufficiency of a description of property, is whether the description does the job it is assigned to do, namely, to make possible the identification of the thing or items described." *Woodward*, 100 N.M. at 712, 675 P.2d at 1011; *accord Valley Fed. Sav. Bank v. Stahl*, 110 N.M. 169, 172, 793 P.2d 851, 854 (1990). Generally, a security

agreement sets forth the rights and obligations between a debtor and creditor. *See Villa v. Alvarado State Bank,* 611 S.W.2d 483, 486–87 (Tex.Civ.App.1981). "The purpose of a financing statement is to notify third parties of the possibility of prior encumbrances and alert them to the need for investigation." *Stahl,* 110 N.M. at 172, 793 P.2d at 854.

■ 6. The security agreement signed by Avlin and Affordable was properly recorded and functioned as both a security agreement and financing statement in this case. *See generally* NMSA 1978, § 55–9–402 cmt. 1 (1985) ("A copy of the security agreement may be filed in place of a separate financing statement, if it contains the required information and signature."). The agreement consists of a typewritten form entitled "GENERAL SECURITY AGREEMENT (Inventory)" with blanks for the parties to fill in names, addresses, dates, dollar amounts, and a description of the collateral. The agreement reads in material part:

D. Collateral

1. The security agreement is granted in the following Collateral and on any separate schedule at any time furnished by Debtor to Lender (all of which are hereby deemed part of this Security Agreement):

[List vehicle(s) and VIN # ]

(a) _____
_____
_____
_____
_____

AND ALSO, the word "Collateral" includes all the following whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(b) All accessions, increases, and additions to and all replacements of and substitutions for any property described above.

(c) All products and produce of any of the property described in this Collateral section.

(d) All accounts, contract rights, general intangibles, instruments, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described in this Collateral section.

(e) All proceeds (including insurance proceeds and trade-ins) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section.

(f) All records and data relating to any of the property described in this Collateral section, whether in the form of writing, photograph, microfilm, microfiche, or electronic media, together with all of Debtor's right, title and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

Other sections of the agreement state that any monies Avlin loaned to Affordable would be used only to purchase motor vehicles, and that Affordable "will not without [Avlin's] consent: remove, except in the ordinary course of its business, including sales of inventory, the Collateral from the locations specified herein and shall keep the Collateral ... at [Affordable's] address as noted in Section A of the Agreement."

■ 7. Although the parties filled in the information regarding names, addresses, dates, and dollar amounts involved in the security agreement, the space provided for describing the collateral was left completely blank. For this reason, Autos II argues that no collateral is described on the face of the security agreement, and this form fails to describe the collateral by type or by item. Avlin responds that the security agreement adequately describes the collateral to include the motor vehicles in Affordable's inventory.

8. New Mexico's Uniform Commercial Code defines "inventory" as goods "held by a person who holds them for sale or lease.... Inventory of a person is not to be classified as his equipment." NMSA 1978, § 55–9–109(4) (1961); *see also* NMSA 1978, § 55–9–105(2) (1997) (applying this definition throughout Article 9). Cases from other jurisdictions generally have required a description of the collateral that is more informative than what is provided in the agreement between Avlin and Affordable. In *Villa,* 611 S.W.2d at 487, the collateral was described as: " 'All motor vehicles purchased from time

to time by Debtor with proceeds of funds advanced by Bank. Such vehicles shall be inventory in hands of Debtor.' " The court held that this description was sufficient to put a third party on notice that there may be a security interest in any motor vehicle acquired or purchased by the borrower to the agreement. *Id.; see also NBD Park Ridge Bank v. SRJ Enters., Inc. (In re SRJ Enters., Inc.),* 151 B.R. 198, 199 (Bankr.N.D.Ill. 1993) (mem.) (security agreement defining inventory as "new and used motor vehicles now owned or hereafter acquired by Dealer which are held for sale or lease"); *In re Bud Long Chevrolet, Inc.,* 39 B.R. 499, 503 (Bankr.D.N.M.1984) (mem.) (security agreement describing interest in new and used vehicles held for sale or lease and their proceeds); *cf. Kuemmerle v. United New Mexico Bank,* 113 N.M. 677, 680–81, 831 P.2d 976, 979–80 (1992) (clause granting security interest in inventory covers after-acquired inventory).

9. In the present case, the space for describing the collateral in the security agreement was left completely blank. The word "inventory" only appears in parentheses immediately below the document's title without further reference to any description or additional information. We determine that this is not an adequate description of the collateral to perfect an interest in the motor vehicles at issue in this case. Indeed, there is no description of the collateral in the security agreement. Because of this inadequacy, Avlin's secured interest in the motor vehicles must fail. *See Eskanos v. Alpha 76, Inc.,* 768 F.Supp. 759, 764 (D.Colo.1991) (lease containing no description of lessee's personal property was insufficient to create security interest in that property notwithstanding the plaintiffs' contention that it was the parties' unexpressed intention to do so); *Rusch Factors, Inc. v. Passport Fashion Ltd.,* 67 Misc.2d 3, 322 N.Y.S.2d 765, 768 (Sup.Ct. 1971) (security agreement was not enforceable against third parties where "documents, incorporated by reference in the Security Agreement, which would have described the property to be covered, were not attached"), *aff'd,* 38 A.D.2d 690, 327 N.Y.S.2d 536 (1971). *See generally* Richard C. Tinney, Annotation, *Sufficiency of Description of Collateral in Security Agreement Under UCC §§ 9–110 and 9–203,* 100 A.L.R.3d 940, 975–79 (1980). We determine that the description of the collateral was inadequate and affirm the judgment of the trial court as to this issue.

## II. SANCTIONS

10. Autos II filed a motion for sanctions against Avlin based on a violation of Rule 1–056. The motion asserts that Avlin's counsel faxed Avlin's response to Auto II's motion for summary judgment the afternoon before the matter was set to be heard. The motion further states that the hearing had to be rescheduled and requests attorney fees for Auto II's counsel having to appear at the first scheduled hearing. The record proper indicates that Autos II filed its motion for summary judgment on October 27, 1995. On November 2, 1995, the notice of hearing set for December 13, 1995, was sent to the parties and filed in the record. Avlin's response was filed in the district court on December 12, 1995.

11. On appeal, Avlin maintains that it did not violate Rule 1–056 because it did not seek to controvert any material fact when it filed its response. It maintains that the district court was without authority to impose the sanction and abused its discretion in making the award since it has no basis in law. Avlin does not challenge the procedure used to impose sanctions in this case and has failed to file the transcript of the hearing on the motion. *See Jones v. Beavers,* 116 N.M. 634, 639, 866 P.2d 362, 367 (Ct.App.1993) (where the party appealing a ruling fails to file a transcript of proceedings, this Court will indulge every reasonable presumption in favor of the lower court's decision). We, therefore, limit our discussion to whether the district court had authority or abused its discretion in making the award in this case.

12. Rule 1–056(D)(2) states in relevant part that "[a] party opposing the motion shall, within fifteen (15) days after service of the motion, submit to the court a written memorandum containing a short, concise statement of the reasons in opposition to the motion with authorities." Regardless of whether Avlin's response sought to contro-

vert any of the facts, it clearly advanced Avlin's reasons in opposition to the motion. Avlin violated Rule 1–056 by filing its response more than six weeks after Autos II's motion for summary judgment had been filed. The negative consequences of the late filing were exacerbated by Avlin's filing its response the afternoon before the hearing was to be held, despite the fact that it had over four weeks notice of the hearing date. We affirm the award of $100 against Avlin as being within the inherent authority of the district court. *See State ex rel. Highway & Transp. Dep't v. Baca*, 120 N.M. 1, 4, 896 P.2d 1148, 1151 (1995) (recognizing court's inherent power to impose sanctions in order to regulate docket, promote judicial efficiency, and deter frivolous filings). We are not persuaded that the amount imposed was an abuse of discretion based on the facts in the record.

## III. CONCLUSION

13. We affirm the judgment in favor of Autos II declaring its rights in the three vehicles as against Avlin's rights. Because we affirm on the basis that the description of the collateral was inadequate, we do not address the parties' arguments concerning the priority of interests. We affirm the award of sanctions against Avlin as within the district court's inherent powers and within its discretion.

14. **IT IS SO ORDERED.**

FLORES and BOSSON, JJ., concur.