**In re Nick John VAN TOL and Johnni Jo Van Tol, Debtors.**

**Norwest Bank El Paso, a National Banking Association, Plaintiff–Appellee,**

v.

**Nick John Van Tol and Johnni Jo Van Tol, Defendants–Appellants,**

**Dairy Farmers of America, Inc., Defendant.**

**BAP No. NM–99–060. Bankruptcy No. 97–13218. Adversary No. 99–1025.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Nov. 8, 2000.

---

9. Debtors did not question this amount.

58

Submitted on the briefs: *

George M. Moore, Albuquerque, New Mexico, for Defendants–Appellants.

Robert A. Johnson, Eastham Johnson Monnheimer & Jontz, P.C., Albuquerque, New Mexico, for Plaintiff–Appellee.

Before BOHANON, BOULDEN, and CORNISH, Bankruptcy Judges.

* After examining the briefs and appellate record, the Court has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. Bankr.P. 8012; 10th Cir. BAP L.R. 8012–1(a). The case is therefore submitted without oral argument.

## OPINION

CORNISH, Bankruptcy Judge.

The Debtors appeal a judgment determining that attempted restrictions placed upon capital retains by a dairy cooperative were ineffective and that Norwest Bank, El Paso, N.A. ("Norwest"), had a valid security interest in capital retains issued by Dairy Farmers of America, Inc. ("DFA"). For the reasons set forth below, we affirm.

### BACKGROUND

The Van Tols ("Debtors") were dairy farmers. The Debtors were members of American Milk Producers, Inc. ("AMPI"), an entity that subsequently merged with DFA. Both AMPI and DFA are agricultural cooperatives. The Debtors sold their milk to AMPI and, after merger, to DFA. A portion of the proceeds from the sale of the Debtors' milk was retained by the cooperatives as capital retains. Capital retains are funds generated by sale of members' milk by the cooperative, which, although allocated to the member's capital account and evidenced by certificates with a stated value, are retained by the cooperative for a period of time to be used to finance the cooperative's operations. Eventually, at the discretion of the directors of the cooperative, the capital retains may be distributed to its members. The members' interest in the retains have characteristics of both shares of stock in a corporation and corporate obligations. At the time of filing the Chapter 11, the Debtors' capital retains account totaled in excess of $170,000.00.

On October 10, 1996, Norwest loaned money to the Debtors, and the Debtors executed two promissory notes in favor of Norwest. One note was in the amount of $1,600,000.00, and the other note was in the amount of $800,000.00. The Debtors also executed a security agreement, which covered accounts, chattel paper, equipment, feed inventory, farm products (namely, milk and its proceeds), general intangibles and livestock. Norwest's security interest was properly perfected.

The bylaws of both AMPI and DFA place restrictions on the transfer or assignment of capital retain certificates. AMPI's bylaws provide as follows:

Restrictions on Transfers and Assignments of Patronage Capital: No assignment or transfer of any qualified or non-qualified per-unit retain certificate, any qualified or non-qualified written notice of allocation, or any book allocation shall be binding on this Association until the Corporate Board has consented thereto, and until such transfer has been entered on the books of this Association. Consent shall be granted only when such assignment or transfer shall be deemed by the Corporate Board to be in the best interest of the Association, and consent to proposed assignments or transfers can be withheld for any reason whatsoever.

AMPI Bylaws, Article XI, Section 5.

The restriction in DFA's bylaws is as follows:

*No Pledge or Assignment.* Written notices of allocation, capital retains and capital account balances may not be pledged, made the subject of a security interest of any kind or otherwise encumbered, or transferred, assigned or otherwise disposed of by the holder, except as permitted by the Board.

DFA Bylaws, Article VI, ¶ 6.4(e).

On January 29, 1999, Norwest filed a Complaint for Specific Performance, to Determine the Validity and Extent in Priority of Lien, and for Damages. The Debtors and DFA filed Answers denying the validity of Norwest's lien. A Stipulation was entered between DFA and Norwest, which provided that in the event Norwest prevailed and if a Court so directed, DFA would pay to Norwest such capital retains as might have been otherwise paid in the future to the Debtors. The Stipulation also provided that at such time as payments were to be made with respect

to the Debtors' capital retains, such payments would be made directly to Norwest until either the Debtors' capital retains were exhausted or the Debtors' indebtedness to Norwest was satisfied.

Both Norwest and the Debtors filed Cross–Motions for Summary Judgment. The Bankruptcy Court entered Judgment in favor of Norwest, ruling that the restrictions on the transfer of the capital retains were invalid and consequently, Norwest had a valid and perfected security interest in the Debtors' capital retains. The Court ordered:

> if, as and when any capital retains heretofore shown as belonging to Nick and Johnni Van Tol on the books of AMPI or DFA become payable, the same shall be paid to Norwest Bank, El Paso, N.A., in care of W.F. Wood, Norwest Bank, PO Box 1081/M.S. 9308, Albuquerque, New Mexico 87103.

Judgment at 2. The issue for review before this Court is whether the Bankruptcy Court erred in determining that the restriction on the assignment of the capital retains was not effective.

### *JURISDICTION*

The Court, with the consent of the parties, has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1). The parties have not opted to have this appeal heard by the United States District Court for the District of New Mexico. *Id.* § 158(c); 10th Cir. BAP L.R. 8001–1(a) and (d). The appeal was timely filed by the Debtors, and the Bankruptcy Court's Judgment is final within the meaning of 28 U.S.C. § 158(a)(1). *See* Fed. R. Bankr.P. 8001–8002.

■ The Bankruptcy Appellate Panel may affirm, modify, or reverse a Bankruptcy Court's judgment, order, or decree, or it may remand with instructions for further proceedings. Fed. R. Bankr.P. 8013. "For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable de novo), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). The parties agree that the facts are not in dispute. Therefore, the Judgment is reviewed de novo.

### *DISCUSSION*

This appeal involves interpretation of New Mexico law. The specific issue is whether Norwest has a security interest in the Debtors' capital retains in light of the by-laws' restrictions on pledging capital retains. Consistent with New Mexico law, the parties agree that capital retains are "general intangibles." *See Valley Fed. Sav. Bank v. Stahl,* 110 N.M. 169, 793 P.2d 851 (1990) (capital retains are a general intangible and not an account). Thus, the attachment, perfection, and priority of a security interest in capital retains are subject to Article 9 of the Uniform Commercial Code as adopted by New Mexico, which applies to general intangibles. See N.M. Stat. Ann. § 55–9–102(1)(a) (Michie 1978).[1]

In order to determine whether the Debtors could pledge their capital retains, the Court must look at § 55–9–318(4), which describes when contract terms prohibiting assignments are ineffective and which provides:

> A term in any contract between an account debtor and an assignor is ineffective if it prohibits assignment of an account or prohibits creation of a security interest in a general intangible for money due or to become due or requires the account debtor's consent to such assignment or security interest.

N.M. Stat. Ann. § 55–9–318(4) (Michie 1978). The Debtors first argue that DFA

---

1. Future reference are to N.M. Stat. Ann.    unless otherwise noted.

is not an "account debtor" because it is not obligated on the capital retains. Second, the Debtors argue that if DFA is an "account debtor," § 55–9–318(4) does not apply because capital retains are not general intangibles "for money due or to become due."

## A. "ACCOUNT DEBTOR"

■ "Account debtor" is defined as "the person who is obligated on an account, chattel paper or general intangible." N.M. Stat. Ann. § 55–9–105(1)(a) (Michie 1978). The Debtors argue that the capital retains represent the Debtors' equity interest in DFA and not a right to the payment of money, and therefore DFA is not "obligated" on the capital retains. The Debtors' reliance on the word "obligated" does not take into consideration the definition of "general intangible," which rejects the position that only a right to payment already in existence can be assigned. A general intangible is defined as "any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, investment property, rights to proceeds of written letters of credit and money." N.M. Stat Ann. § 55–9–106 (Michie 1978). The Official Comment to § 55–9–106 provides:

> The term 'general intangibles' brings under this article miscellaneous types of contractual rights and other personal property which are used or may become customarily used as commercial security. Examples are goodwill, literary rights and rights to performance. Other examples are copyrights, trademarks and patents, except to the extent that they may be excluded by Section 9–104(a).
>
> . . . .
>
> This article rejects any lingering common law notion that only rights already earned can be assigned. In the triangular arrangement following assignment, there is reason to allow the original parties—assignor and account debtor—more flexibility in modifying the under-

lying contract before performance than after performance (see Section 9–318).

*Id.* The definition of general intangible is not limited to money or rights to payment currently existing. In this case, the Debtors' right in the capital retains could lead to payment of monies at some time in the future. Therefore, DFA is an account debtor.

Debtors also rely on *Morton v. Santa Anna National Bank (In re Bonnema)*, 219 B.R. 951 (Bankr.N.D.Tex.1998). The *Bonnema* court found that capital retains were general intangibles. *Id.* at 955. However, when the court reviewed the effectiveness of the restrictions placed on the transfer or assignment of the capital retains, in light of Tex. Bus. & Com.Code Ann. § 9.318(d), it determined that the cooperative was not an "account debtor." *Id.* at 956. In so holding, the court reasoned that the cooperative was not indebted or obligated to the debtors; rather, the debtors had an equity interest in the capital retains. *Id.*

New Mexico case law, however, leads to a different conclusion than that in *Bonnema.* Like *Bonnema,* the *Stahl* court recognized that "the capital retains are income to the member, in the form of an equity interest." *Stahl,* 793 P.2d at 853. However, the court in *Stahl* found:

> Under the bylaws of the cooperative marketing association of which the debtor dairyman was a member producer, the debtor had a contractual right (in a non-technical sense) to the capital retains held by the coop, and the bank's financing statement adequately gave notice to the public that the bank claimed an interest in this right. The district court did not err in finding that Bank of America had a perfected security interest in the Stahls' capital retains.

*Id.* at 855. In *Stahl,* the Court further determined that the capital retains account was a general intangible subject to Article 9 of the U.C.C. and could be pledged as security. *Id.* at 854–55.

Unlike *Bonnema*, which held that the cooperative was not an account debtor because it was not indebted or obligated to the debtors, New Mexico cases have held that a future right to payment is sufficient to bring a party within the classification of account debtor. In *First National Bank v. Mountain States Telephone & Telegraph Co.*, 91 N.M. 126, 571 P.2d 118 (1977), the debtor pledged to First National Bank an account payment due from Mountain States. Mountain States took the position that it was not an account debtor and that the debtor had nothing to assign at the time it received the notice of assignment because the contract had not been performed. *Id.* at 120. The Court held Mountain States was an account debtor because the contract was in existence and the assignor had the right to payment upon performance of the contract work. *Id.* at 121. In *Hasse Contracting Co. v. KBK Financial, Inc.*, 125 N.M. 17, 956 P.2d 816, 818 (1997), *aff'd. on other grounds*, 127 N.M. 316, 980 P.2d 641 (1999), the debtor pledged its accounts receivable to a factoring company, which filed a financing statement. Thereafter, the debtor entered into a contract to perform concrete work on a state highway project. *Id.* The purchase order evidencing the agreement between the debtor and the contractor provided that the debtor could not pledge this account. *Id.* Although the right to payment had not been earned at the time of the execution of the purchase order, the court determined that § 55–9–318(4) nullified the anti-transfer provision in the purchase order "to the extent it seeks to disallow assignments for purposes of creating a security interest in the account." *Id.* at 821. From language of the statutes and the New Mexico case law, this Court determines that the New Mexico courts would apply § 55–9–318(4) to this case, deem DFA to be obligated on the capital retains and thus an account debtor, and invalidate the restrictions on the capital retains.

## B. "GENERAL INTANGIBLE FOR MONEY DUE OR TO BECOME DUE ..."

■ The Debtors argue that capital retains are not "general intangibles for money due or to become due ..." and that, therefore, § 55–9–318(4) is not applicable. Section 55–9–318(4) does not require that a debt exists. It includes "money ... to become due." N.M. Stat. Ann. § 55–9–318(4) (Michie 1978). The capital retains, classified as general intangibles, could result in a payment of money to the Debtors at some time in the future, as discussed earlier. Thus, the Court finds that the bankruptcy court did not err in determining that § 55–9–318(4) is applicable, and the restrictions placed on capital retains are invalid.

### CONCLUSION

For the reasons stated above, the Bankruptcy Court's order granting summary judgment in favor of Norwest is AFFIRMED.