**In re David THAEMERT and Bonita Thaemert, individually and d/b/a Thaemert Farms, Debtors.**

**In re Earl THAEMERT and Diane Thaemert, individually and d/b/a Thaemert Farms, Debtors.**

**STATE BANK OF YOUNG AMERICA, a secured creditor, Plaintiff,**

v.

**Edward BERGQUIST, in his capacity as trustee in a bankruptcy of David and Bonita Thaemert, No. 4–86–539(K) and in his capacity as trustee in a bankruptcy of Earl and Diane Thaemert, No. 4–86–538(K), Defendant.**

**Bankruptcy Nos. 4–86–539, 4–86–538. Adv. No. 4–88–150.**

United States Bankruptcy Court, D. Minnesota.

Dec. 16, 1988.

Robert A. Nicklaus, Nicklaus & Fahey, Chaska, Minn., for plaintiff.

Reed H. Glawe, Gislason, Dosland, Hunter & Malecki, New Ulm, Minn., for defendant.

ORDER

ROBERT J. KRESSEL, Chief Judge.

This proceeding came on for hearing on cross-motions for summary judgment. Robert A. Nicklaus appeared for the plaintiff. Reed H. Glawe appeared for the defendant. This court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 103(b). This is a core proceeding un-

der 28 U.S.C. § 157(b)(2)(K). Based on the stipulated facts, memoranda and arguments of counsel, and the file in this proceeding, I make the following memorandum order.

## BACKGROUND

From 1970 through 1985, David Thaemert, Earl Thaemert, and Ellsworth Thaemert, either individually or doing business as Thaemert Farms, operated a dairy farm in and around New Germany and Mayer, Minnesota. The Thaemerts sold their dairy produce to Bongards Creameries, a Minnesota cooperative association originally organized under Chapter 326 of the Minnesota Statutes.[1] Upon the sale of their dairy produce to Bongards, the Thaemerts were paid the wholesale value of that produce as determined by Bongards.

Pursuant to its Bylaws, Bongards is required to return any net profits, or net margins, made in any year to its patrons[2] as patronage dividends. Bongards pays a portion (typically about 20%) of the net margins pro rata to its patrons in the September following the close of each calendar year. Bongards retains the unpaid balance of the net margins in its patrons' revolving fund. A given patron's portion of the net margins deposited in the revolving fund is evidenced by certificates issued to patrons. This dispute concerns revolving fund certificates issued to David Thaemert, Earl Thaemert and Thaemert Farms[3] for dairy products they sold to Bongards between 1977 and 1983.

Bongards' Bylaws provide that patronage dividends may be paid to patrons from the revolving fund only upon an authorizing resolution of Bongards' Board of Directors. These resolutions have historically been adopted approximately seven years following the accrual of the net margins.[4] Assuming Bongards continues its current practice of distributing patronage dividends approximately seven years after the net margins accrue, payments on the Thaemerts' certificates will be made in 1988, 1989, and 1990.[5]

On June 14, 1984 and July 9, 1984, the Thaemerts executed security agreements in favor of the State Bank of Young America to secure payment of a $64,787.30 promissory note. The security agreements granted to the Bank a security interest in Bongards revolving fund certificates issued to Ellsworth Thaemert, David Thaemert, Earl Thaemert, or Thaemert Farms.[6] On June 14, 1984, the Thaemerts also executed a collateral pledge agreement and a financing statement in favor of the Bank. The financing statement was filed with the Minnesota Secretary of State and the Carver County Recorder on June 25, 1984. The Bank was given possession of 21 of the certificates on June 14, 1984, and 3 of the certificates on August 20, 1984, and has continually retained possession since that time.

On February 27, 1986, David and Bonita Thaemert and Earl and Diane Thaemert filed their respective chapter 7 petitions, both individually and doing business as Thaemert Farms. Edward Bergquist is the trustee in both cases. On May 12, 1988, the Bank commenced this adversary proceeding against the trustee, seeking a determination of the validity, extent and priority of its security interest in the debtors' revolving fund certificates. On October 27,

1. Chapter 326 is now Chapter 308.

2. The term patron includes members, producers, and purchasers who do business with Bongards.

3. Debtors Diane Thaemert and Bonita Thaemert have no rights or interest in the certificates which are the subject of this proceeding.

4. Bongards has consistently operated at a profit, and, therefore, patronage dividends have been declared each year. However, the amount of the patronage dividend varies from year to year.

5. Bongards paid the 1987 patronage dividends directly to the trustee. Pursuant to its security interest, the State Bank of Young America made demand on the trustee for the dividends, but the trustee refused to deliver the dividends to the Bank.

6. The revolving fund certificates were identified in the security agreements as "Bongards Creameries of Bongards, Minnesota Patron's Statements."

1988, the Bank filed its motion for summary judgment, asserting that it holds a perfected and enforceable security interest in the certificates and that the trustee has no right, title, or interest in the certificates. On October 28, 1988, the trustee filed his motion for summary judgment, asserting that the Bank's security interest in the certificates was obtained in violation of Bongards' Bylaws, and hence, is void and unenforceable.

## DISCUSSION

Summary judgment will be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When deciding a motion for summary judgment, the court must view the facts and all reasonable inferences drawn from the facts in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Foster v. Johns–Manville Sales Corp.*, 787 F.2d 390 (8th Cir.1986).

The sole issue in this proceeding is whether the Bank's security interest in the debtors' revolving fund certificates is valid and enforceable against the trustee. The trustee asserts that the security interest is void and unenforceable because Article VII, Section 5 of Bongards' Bylaws prohibits the assignment or transfer of the certificates without the approval of Bongards' Board of Directors. It is undisputed that Bongards did not approve the Thaemerts' transfer to the Bank of the security interest in the revolving fund certificates.

Article VII, Section 5 of Bongards' Bylaws provides:

*Transfer.* No assignment or transfer of any interest in the revolving fund shall be binding on the association without the consent of the Board of Directors nor until the same shall have been entered on the books of the association.

Contrary to the trustee's position, this provision does not prohibit the Thaemerts' transfer of their revolving fund certificates or their underlying interest in the fund itself. Rather, the provision merely indicates that no such transfer will be binding on Bongards. Therefore, while the Bank's security interest may not necessarily be binding on Bongards, there is nothing in Bongards' Bylaws which renders that security interest void or unenforceable as between the Thaemerts and the Bank.

In support of his argument, the trustee cites *Calvert v. Bongards Creameries (In re Schauer)*, 62 B.R. 526 (Bktcy.D.Minn. 1986), *aff'd*, 835 F.2d 1222 (8th Cir.1987). In *Schauer*, the bankruptcy court and the eighth circuit determined that any transfer by the trustee of the revolving fund certificates was not binding on Bongards. The issue before the bankruptcy court was whether Bongards' Board of Directors could be compelled to consent to the trustee's transfer of the revolving fund account to a third party. Both the bankruptcy court and the Eighth Circuit held that the Board was not obligated to recognize or consent to such a transfer. The additional statement, in both the bankruptcy court and eighth circuit opinions, that the trustee could not transfer the certificates without the consent of Bongards' Board was an overly broad reading of Article VII, Section 5 of the Bylaws, and was dictum. Accordingly, that statement is not controlling in this proceeding.

In challenging the validity of the Bank's security interest, the trustee is relying on his rights as successor in interest to the debtors rather than his rights as a hypothetical lien creditor under § 544. Therefore, whether the revolving fund certificates are "instruments" or "general intangibles" or whether the Bank's security interest is properly perfected is irrelevant.[7] Instead, the validity and enforceability of the Bank's security interest vis a vis the trustee derives entirely from the validity

7. The Bank had possession of the revolving fund certificates and has filed a financing statement concerning the certificates. Accordingly, it appears that the Bank's security interest was perfected regardless of the characterization of the certificates as "instruments" or "general intangibles."

and enforceability of that security interest vis a vis the debtors.

I find that the Bank's security interest in the revolving fund certificates is valid and enforceable against the debtors, and hence, is also valid and enforceable against the trustee. Minnesota Statute § 336.9–203 provides:

> a security interest is not enforceable against the debtor or third parties unless
> (a) the collateral is in the possession of the secured party; or
> (b) the debtor has signed a security agreement which contains a description of the collateral ...

It is clear the Bank's security interest is enforceable against the debtors. The revolving fund certificates have been and continue to be in the Bank's possession. The debtors signed a security agreement which described the certificates by number, date, and patron's name. It is well established that, "to the extent a legal or equitable interest of the debtor in property is limited in the debtor's hands, it is equally limited in the hands of the trustee." *In re Joliet–Will County Community Action Agency,* 58 B.R. 973 (Bktcy.N.D.Ill.1986), *aff'd,* 78 B.R. 184 (N.D.Ill.1987); *Calvert v. Bongards Creameries,* 835 F.2d 1222, 1225 (8th Cir.1987). Therefore, upon the filing of the debtors' chapter 7 petitions, the trustee succeeded to their property rights in the revolving fund certificates, subject to the State Bank of Young America's valid and enforceable security interest in those certificates.

In conclusion, there are no issues of material fact as to the validity and enforceability of the Bank's security interest in the revolving fund certificates, and the Bank is entitled to judgment as a matter of law.

THEREFORE, IT IS ORDERED:

1. The plaintiff's motion for summary judgment is granted;

2. The defendant's motion for summary judgment is denied; and

3. The plaintiff has a valid security interest in the debtors' rights to receive payments from Bongards Creameries' revolving fund.

LET JUDGMENT BE ENTERED ACCORDINGLY.