In re James Chris **GREGERSON,**
Debtor.

No. 01–01765S.

United States Bankruptcy Court,
N.D. Iowa,
Western Division.

July 19, 2004.

Donald H. Molstad, Sioux City, IA, for
Debtor.

Wil L. Forker, Sioux City, IA, pro se.

### MEMORANDUM DECISION

WILLIAM L. EDMONDS, Bankruptcy
Judge.

Wil L. Forker, trustee, requests an or-
der authorizing the sale of the bankruptcy
estate's interest in shares of stock in two
corporations—Gregerson Farms, Inc. and
Gregerson Trucking, Inc. He proposes to
sell the shares to Gregerson Farms, Inc.
free and clear of liens, claims, and encum-
brances. Berne Coop, a creditor, objects
to the motion.

Hearing on the motion was held June
22, 2004 in Sioux City. Wil L. Forker
appeared as trustee. A. Frank Baron ap-
peared as attorney for Berne Coop. Jef-
frey T. Wegner appeared as attorney for
Gregerson Farms, Inc.

Although Forker couches his request as
a motion to sell estate property free and
clear of claims, liens, and encumbrances, I
conclude it is, in the first instance, a mo-
tion to compromise a dispute with one of
the corporations and its non-debtor share-
holders. Approval of the compromise
would result in a sale. This is a core
proceeding under 28 U.S.C. § 157(b)(2)(A)
and (N).

James C. Gregerson filed his chapter 12 petition on May 15, 2001. The case was converted to chapter 7 on November 8, 2001. Forker was appointed trustee.

Among the assets of the estate were Gregerson's interests in shares of stock of two Iowa corporations. Gregerson owned all of the stock of Gregerson Trucking, Inc. (hereinafter "Trucking") and one-third of the shares of stock in Gregerson Farms, Inc. (hereinafter "Farms"). He owned 135 shares of Farms. The other two-thirds of the outstanding shares of Farms is owned in equal amounts by Gregerson's two brothers: Robert Gregerson and Francis D. Gregerson.

An agreement among the three shareholders of Farms restricts the right of the shareholders to transfer their shares. Their Stock Purchase Agreement, dated June 1, 1978, states as follows:

(2) RESTRICTIONS ON TRANSFERS DURING THE LIFETIME OF THESE SHAREHOLDERS. No shares in this corporation shall be transferred by any of the parties to this agreement during his life, except with the written consent of the other parties to this agreement. If a lifetime transfer is approved, the stock shall be first offered in writing to the corporation at the value last determined in the attached schedule "A".

Stipulation, Exhibit B, Stock Purchase Agreement, para. (2).

The schedule "A" referred to in paragraph 2 was to be updated annually by the shareholders to state the agreed value per share which would determine the purchase price for sales to the corporation under the Agreement. *See* Stipulation, Exhibit B, para. (1)(a) and (2). If the shareholders were not able to agree, the value for that year would be determined by disinterested appraisers. *Id.* at para. (1)(a).

According to the Stock Purchase Agreement, the restrictions on transfer, including the corporation's right of first refusal, were to apply to transfers by operation of law. *Id.* para. (2), unnumbered subpara. 4.

The agreement provides further that if a shareholder obtains written consent to sell, and his offer to the corporation is not accepted within 60 days, the shareholder has 30 days thereafter to dispose of all or part of his stock at a price not less than the price offered to the corporation. *Id.*, para. 2, unnumbered subpara. 2.

Gregerson's stock certificate representing his interest in Farms contained the following notation:

The sale, transfer or encumbrance of this certificate is subject to an agreement dated June 1978, among all of the shareholders. A copy of the Agreement is on file in the office of the registered agent of the corporation. The Agreement provides, among other things, for certain obligations to sell and to purchase the shares of stock evidenced by this certificate, and a means of determining the price. By accepting the shares of stock evidenced by this Certificate, the holder agrees to be bound by said Agreement.

Stipulation, Exhibit A. The above restriction was conspicuously noted on the certificate. The stated purpose in the agreement for the restriction was to maintain ownership among the three brothers or their survivors. Stipulation, Exhibit B, recitals.

Gregerson's two brothers, Francis and Robert, have not consented in writing to the sale of the bankruptcy estate's shares of stock. Because of the transfer restrictions, they dispute Forker's right to sell the stock. Berne Coop has offered $50,000.00 for the estate's interest in the shares of the two companies. Dennis Holdsworth, the general manager of Coop,

says that Coop would offer as much as $225,000.00 for the shares under certain conditions—that the court approve the sale, that the assets of Farms are as have been represented, and that Farm's debts are as have been represented. Coop does not require as a condition of its purchase that as a shareholder it be free of the transfer restrictions. If Coop would purchase the stock, it is likely that Farms would lose its subchapter S tax status.

Gregerson's shares of stock in the two corporations were shown on the schedules of assets. Neither of the two brothers was shown as a creditor. Gregerson did not schedule any executory contracts. There is no evidence as to when Forker first examined Gregerson's stock certificate in Farms.

Farms owns farmland which Forker believes is worth approximately $850,000.00. There is a mortgage debt against the land of about $250,000.00. Forker estimates the liquidation cost of the land at $40,000.00 and the capital gains tax triggered by a sale of the land at $200,000.00. He says Farms owes an estimated $33,000.00 in unsecured debt. He says he estimates the net worth of Farms, if liquidated, at $360,000.00. The estate's share would be one-third of that amount or $120,000.00. Schedule "A" to the Stock Purchase Agreement shows an agreement by the brothers/shareholders as to the value of shares in Farms. Stipulation, Stock Purchase Agreement, Schedule "A." I am unable to determine the date of the agreed share price because of the copy quality of the exhibit. The fixed value per share was agreed to be $2,000.00 for a total value of the outstanding 405 shares of $810,000.00. All three shareholders agreed to the fixing of the value. Under the agreement, if there were consent to a sale, Farms would have a right of first refusal to purchase the bankruptcy estate's 135 shares for $270,000.00.

There was no evidence as to the value of the estate's shares of Trucking. Forker asks for authority to sell the shares of Trucking as well as the 135 shares of Farms to Farms for $62,500.00. Forker proposes to accept Farms's offer to "fully and finally resolve the disputes between Trustee and the Brother Shareholders and Farms, Inc. over the Trustee's ability to realize value of the Shares for the benefit of the estates, creditors and parties in interest." Trustee's Motion for Order Authorizing Sale, docket no. 65, ¶ 7.

As to a proposed sale free of liens, claims, and encumbrances, Forker says he has possession of the shares and "does not believe that there are any persons or entities that hold or assert a lien, claim or encumbrance against the Shares." *Id.* ¶ 13.

### Discussion

■ Forker disagrees with Francis and Robert Gregerson and Farms as to whether he may sell the estate's shares of Farms without obtaining the written consent of Francis and Robert. Forker proposes to settle the dispute by selling the estate's shares of Farms to Farms for $62,500.00. Forker contends this is a reasonable settlement given uncertainty over the outcome of the dispute if tried to the court.

Coop contends that the Stock Purchase Agreement is an executory contract among the three shareholders and that it has been rejected by Forker as a matter of law. Coop argues that the consequence of rejection is that Forker may now sell the estate's shares of Farms to anyone, free of the restriction. Forker is not so sure. He is concerned that if he does not compromise with the brothers and Farms, and then he is unable to obtain court authority to sell the shares to a third party notwithstanding the transfer restrictions, he would have only Farms to sell to and no offer "on the table." He believes it is best

for the estate and its creditors to accept the certainty of the offer of $62,500.00. Farms disagrees with the proposition that the Stock Purchase Agreement is an executory contract. It contends that Forker is burdened with the restrictions on transfer.

Forker asks for authority to sell the estate's shares of Farms and Trucking free and clear of liens, claims, and encumbrances under 11 U.S.C. § 363(f). But he concedes he knows of no liens, claims, or encumbrances. The motion is therefore unnecessary. Normally, he may sell merely on notice pursuant to Fed.R.Bankr.P. 6004. He would not need a court order absent the objection of Coop.

■ But his proposal is more than merely a sale. It is a motion to compromise his dispute with the brothers and Farms. His motion is, therefore, made under Fed.R.Bankr.P. 9019. A motion to compromise is addressed to the discretion of the court. Factors bearing on the court's decision include (1) the trustee's probability of success in litigation, (2) the difficulties encountered in collection or recovery, (3) the complexity of the litigation and the likely expense, inconvenience and delay which might be entailed in it, and (4) the interests of creditors with proper deference to their reasonable views. *Yates v. Forker (In re Patriot Company)*, 303 B.R. 811, 815 (8th Cir. BAP 2004)(*citing Drexel Burnham Lambert v. Flight Transportation Corp. (In re Flight Transp. Corp. Securities Litigation)*, 730 F.2d 1128, 1135 (8th Cir.1984)). The court should approve a proposed compromise unless it falls "below the lowest point in the range of reasonableness." *Yates v. Forker*, 303 B.R. at 815–16 (*quoting Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2nd Cir.1983)).

### Likelihood of Success on the Merits

Forker faces serious obstacles in obtaining authorization from the court to sell the shares of Farms to a third party without the consent of the non-debtor shareholders. Shareholders may agree to impose restrictions on the transfer of shares of a corporation. Iowa Code § 490.627(1). A restriction on transfer is authorized for any reasonable purpose. Iowa Code § 490.627(3)(c). It is also authorized in order to maintain the identity of shareholders. Iowa Code § 490.627(3)(a). It is likely that the shareholders of Farms can show that the restrictions imposed here are for a reasonable purpose, for example maintaining corporate ownership in a family and maintaining subchapter S tax status. The restriction on transfer was noted conspicuously on the back of the share certificate. *See* Iowa Code § 490.627(2).

I would agree with Coop that the Stock Purchase Agreement is likely an executory contract. The Bankruptcy Code does not define "executory contract." Our Circuit Court has defined an executory contract as

> a contract under which the obligations of both the bankrupt and the other party to the contract are so unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.

*Cameron v. Pfaff Plumbing and Heating, Inc.*, 966 F.2d 414, 416 (8th Cir.1992)(confirming the definition it had announced under the Bankruptcy Act).

The contract at issue remains unperformed. Each of the shareholders has agreed not to sell without the consent of the others. If consent is given, each brother selling his shares must afford the corporation a right of first refusal at a fixed, pre-determined price. Failure of any to abide by the restriction would constitute a material breach.

Coop says the executory contract was rejected by operation of law because it was

not assumed within 60 days of the order for relief. *See* 11 U.S.C. § 365(d)(1). The date of the order for relief in this case, for purposes of section 365(d), is the date of conversion. 11 U.S.C. § 348(c). The date of conversion was November 8, 2001. Forker did not assume or reject the executory contract within 60 days after the order for relief. It was rejected by operation of law. 11 U.S.C. § 365(d)(1).

Forker contends that he may even now move to assume or reject the Stock Purchase Agreement because the contract, if executory, was not scheduled by Gregerson. One view is that if the "contract is not scheduled and the trustee does not discover it, the presumption of rejection should not apply." 3 Collier on Bankruptcy, ¶ 365.04[1][a] (15th ed. rev.2004). But at least one court has indicated that the statutory time for assumption or rejection cannot be equitably tolled, even if the doctrine were applicable, absent clear and convincing proof that the existence of the contract had been fraudulently concealed and unless there were a showing that the trustee had exercised due diligence. *In re Del Grosso*, 115 B.R. 136, 139–40 (Bankr. N.D.Ill.1990).

In the pending case, although the Stock Purchase Agreement was not scheduled, the debtor's interest in the stock was, and the existence of the Stock Purchase Agreement was conspicuously noted on the stock certificate. Moreover, Forker introduced no evidence as to when he learned of the agreement. Based on the evidence, the court is unable to say that Forker would be successful in showing that the contract could still be assumed.

I doubt that it matters whether the Stock Purchase Agreement is executory or whether as an executory contract it was rejected by operation of law. Notwithstanding the restriction on transfer of the Farm shares, the shares became property of the bankruptcy estate. 11 U.S.C. § 541(c)(1)(A). But the bankruptcy estate takes the shares subject to the same restrictions that applied to Gregerson's interest before bankruptcy. *Calvert v. Bongards Creameries (In re Schauer)*, 835 F.2d 1222, 1225 (8th Cir.1987). The restrictions would apply regardless of the rejection of the Stock Purchase Agreement. Therefore, it is unlikely Forker could succeed in selling the stock to a third party without the consent of the other shareholders.

*Difficulties in Collection*

If Forker could sell the Farms shares to a third party, he would likely not have difficulty in finding an offer greater than that made by Farms. Coop has indicated it would bid more than $200,000.00 for the shares.

*Complexity of Litigation,
Delay, and Expense*

If Forker sought permission to sell to a third party, there would certainly be delay in liquidating the stock. Farms would no doubt object. However, the litigation would not be overly complex or expensive. Most of the legal arguments have been made, and it appears there are few disputed factual issues.

*Interest of Creditors*

The trustee served notice of the compromise with Farms on all creditors and parties-in-interest. Only Coop objected. It argues that the shares are worth more than $62,500.00, and it offers to pay more.

The burden is on the trustee to show that this compromise is in the best interest of creditors. Because of the likelihood that his sale of the shares is restricted, he believes that $62,500.00 is a fair price. The parties themselves agreed that if there were consent to sell, the sales price of the shares would be $270,000.00. Coop is willing to pay $225,000.00. Forker believes the value of the shares on dissolution of Farms would be $120,000.00.

The offer of $62,500.00 by Farms is a "low ball" offer based on the leverage of the other shareholders by their stated unwillingness to give consent to sale, and based on the argument that trustee is in the position of a minority shareholder. The trustee believes the offer is the best he can do under the circumstances. However, he has presented no evidence as to the stream of income from the corporation if he retains the shares. He has also not presented evidence as to whether the by-laws of the corporation provide him with any relief under these circumstances. Also, he has presented no evidence as to the value of the estate's interest in Trucking. Because of the lack of information regarding these matters, I cannot find that this settlement is not below the lowest point in the range or reasonableness or that it is in the best interest of creditors.

IT IS ORDERED that the trustee's motion to compromise is denied.